Opinion
 

 SIMS, J.
 

 Defendant Ronald Aubrey Crooks burglarized the victim’s apartment and raped the victim in her own bedroom. As pertinent, defendant was sentenced to a term of 25 years to life under the provisions of California’s “first strike” sentencing law as set forth in Penal Code section 667.61.
 
 [1]
 
 In the published portion of this opinion, we conclude this sentence did not constitute cruel or unusual punishment, nor did the sentence violate defendant’s right to the equal protection of the laws.
 

 Defendant was charged by an amended information with five felony counts arising from the same set of facts: first degree burglary with intent to commit rape (count 1; §§ 459, 261, subd. (a)(2)); sexual battery (count 2; § 243.4, subd. (a)); and three counts of rape by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury (counts 3-5; §261, subd. (a)(2)). It was also alleged that defendant committed counts 3 through 5 while personally armed with a deadly weapon, a knife (§ 12022.3, subd. (b)), and during the commission of a first degree burglary (§ 667.61, subds. (c)(2), (d)(4)).
 

 After trial, a jury convicted defendant on all counts and found all the accompanying allegations true.
 

 The trial court sentenced defendant to a total state prison term of thirty-seven years and eight months to life, computed as follows: twenty-five years to life on count 3 (§§ 261, subd. (a)(2), 459, 667.61), plus a two-year
 
 *801
 
 enhancement on the personal arming allegation (§ 12022.3, subd. (b)); six years on count 4, plus a two-year enhancement on the personal arming allegation, run consecutively to the term on count 3; and an unstayed term of two years on count 5, plus an eight-month enhancement on the personal arming allegation, run consecutively to the terms on counts 3 and 4.
 
 [2]
 

 Defendant contends that the trial court erred prejudicially by preventing him from eliciting a witness’s opinion as to whether a person with a certain blood-alcohol percentage would be impaired. He further contends that his trial counsel provided ineffective assistance by failing to call a certain witness and by failing to pursue an inconsistency between the victim’s trial testimony and her pretrial story. He also raises numerous claims of sentencing error, some of which attack the constitutionality of section 667.61, the “one strike” provision mandating life sentences for certain forcible rapes.
 

 The People not only disagree with all of defendant’s claims of error but contend that defendant’s sentence was too light because the trial court’s imposition of a reduced enhancement of eight months on count 5, rather than a full-term two-year enhancement, was unauthorized by law.
 

 Agreeing with the People, we shall modify the judgment to impose a two-year enhancement on count 5. In all other respects, we shall affirm the judgment.
 

 Facts
 

 The essential facts were not disputed; indeed, they were confirmed by defendant in his own testimony.
 

 On the morning of November 7, 1995,
 
 [3]
 
 the victim, Angelina S., discovered that she had left her keys in the locked bedroom of her duplex. Unable to open the door, she called a neighbor; the neighbor suggested asking the help of defendant, who lived across the street. Defendant succeeded in opening the door.
 

 Before going to bed that night the victim locked the doors to her house, but not the bedroom door.
 

 In the early morning hours of November 8, the victim was awakened by the cries of her seven-year-old daughter Paula, who was sleeping in the same bed. The victim saw a man standing at the foot of the bed. In her half-awake
 
 *802
 
 state she thought he was wearing a blue and white Power Ranger outfit; later she realized that he had on a mask.
 
 [4]
 
 She screamed, got out of bed, and tried to reach the bedroom door, with Paula behind her. Defendant pinned the victim facedown on the floor and lay on top of her. During the struggle she perceived that he was naked except for the “mask.” When she managed to remove the “mask,” she recognized defendant.
 

 She asked him what he wanted, telling him she had no money or jewelry. She believed that he answered: “[That’s] not what I want.” She asked him to let Paula leave the room; he agreed and told Paula to go to bed. In her native Tagalog, the victim then told Paula to call the authorities (avoiding the words “police” and “911” for fear of alarming defendant). Soon afterward Paula called 911 and told the victim in Tagalog from outside the bedroom that she had done so.
 

 The victim asked defendant why he was doing this and “[didn’t he] have a wife to do this with?” He told her to shut up. When she screamed instead, he slapped her three or four times, telling her to “[t]hink about [her] daughter.”
 

 Defendant initially agreed not to insert his penis into the victim so that she would not become pregnant. As the struggle continued, however, he took off her sweatpants and underwear, touching her “private part.” He then put his hand under her shirt and touched her breast. Next, he tried to open her legs by force and penetrate her. He had a hard time because she continued to resist and try to move away. However, he succeeded in pushing his penis into her vagina three separate times, though he could not get it all the way in.
 

 The victim heard her dog bark. Defendant asked her what the noise was; she said she did not know. He stood up, pulled her by the hair, and told her to go to the bedroom window. When he let go of her hair, she ran from the bedroom and out of the house, screaming. She saw the police outside. A sheriff’s deputy stopped defendant as he tried to run out the front door.
 

 Investigating officers found a large kitchen knife belonging to the victim on the bedroom floor alongside her bed; she had not put it there. It had been in her kitchen when she went to sleep that night.
 

 Deputy Osborne, one of the investigating officers, detected a mild odor of alcohol on defendant’s breath but observed no other signs of intoxication.
 

 A detective conducted a videotaped interview of defendant (which was played for the jury) around 5:40 a.m. on November 8. Defendant confessed
 
 *803
 
 his crimes but blamed them on his alcoholism and the alcohol he had drunk throughout the day. He admitted that he had penetrated the victim on three separate occasions.
 

 A physical examination of the victim revealed two small tears at the bottom of her vagina.
 

 Testifying on his own behalf, defendant stated that he is an alcoholic and that he assaulted the victim on account of his alcoholism. He drank six quarts of beer on November 7 and also smoked a marijuana joint.
 

 During the afternoon of November 7, despite having drunk three quarts of beer already, he was able to drive his daughter safely to a karate class. By 4 p.m. he was still feeling all right, able to think about his decisions and make plans.
 

 Defendant and his wife quarreled at dinner. Afterward he went out. He could not remember what he was doing between 11:30 p.m. on the 7th and 2:30 a.m. on the 8th, but he remembered entering the victim’s house through the window, going to her washer and grabbing a pair of her panties for a disguise, then going back to the kitchen and taking a knife, which he intended to use to scare her. He took off his clothes in her living room before going to the bedroom. He never actually made a decision to assault her, but he knew what he was doing and did exactly what he intended to do. The alcohol told him it was all right to do everything he did.
 

 After entering the victim’s bedroom he put the knife down. At that point the victim woke up. He remembered all the details of the offenses clearly and described them essentially as the victim had done.
 

 Counsel stipulated that a blood test administered to defendant at 10 a.m. on November 8 showed a blood-alcohol level of .07 percent.
 

 Discussion
 

 I-II
 
 *
 

 III
 

 Defendant contends that as applied to the facts of this case section 667.61 constitutes cruel and/or unusual punishment under both the United States and the California Constitutions. We disagree.
 

 
 *804
 
 Section 667.61 provides as relevant:
 

 “(a) A person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) . . . shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 25 years ....
 

 “(c) This section shall apply to any of the following offenses:
 

 “(1) A violation of paragraph (2) of subdivision (a) of Section 261.[
 
 6
 
 ]
 

 “(d) The following circumstances shall apply to the offenses specified in subdivision (c):
 

 “(4) The defendant committed the present offense during the commission of a burglary, as defined in subdivision (a) of Section 460,[
 
 7
 
 ] with intent to commit an offense specified in subdivision (c).”
 

 Thus section 667.61 mandated a minimum sentence of 25 years to life in state prison for defendant because he committed the kind of rape specified in section 261, subdivision (a)(2), while engaged in the commission of a first degree burglary done with the intent to commit that kind of rape. (§ 667.61, subd. (d)(4).)
 
 [8]
 
 Before the trial court imposed sentence under section 667.61, it considered and denied a motion by defendant challenging the mandatory sentence as “cruel and unusual” under the federal Constitution (8th and 14th Amends.) and as “cruel or unusual” under the California Constitution (art. I, § 17). We shall conclude the court was correct.
 

 
 *805
 
 According to defendant, his sentence is cruel and unusual punishment under the federal Constitution and “cruel or unusual” punishment under the California Constitution because (1) at age 39 he had no prior felony convictions; (2) though armed with a knife, he left it on the floor throughout the incident; (3) he neither inflicted nor was charged with inflicting great bodily injury; (4) the present incident is “appellant’s only felony” (original emphasis); (5) his punishment exceeds that which may be imposed on a first degree murderer or other unlawful killer; (6) his punishment also far exceeds that which may be imposed on a perpetrator of violent rape, rape in concert, or other sexual crimes if not subject to section 667.61; and (7) even if rape during the commission of a burglary is more heinous than rape alone, the disparity in sentencing is irrationally great. We are not persuaded.
 

 1.
 
 The federal standard.
 

 In asserting his federal claim, defendant relies on
 
 Solem
 
 v.
 
 Helm
 
 (1983) 463 U.S. 277 [103 S.Ct. 3001, 77 L. Ed.2d 637]. In Solem, the court found unconstitutional a life sentence without the possibility of parole for a seventh nonviolent felony. A bare majority of the court held "... a court’s proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.”
 
 {Id.
 
 at p. 292 [103 S.Ct. at pp. 3010-3011, 77 L.Ed.2d at p. 650].)
 

 Defendant’s reliance on
 
 Solem
 
 is weakened by
 
 Harmelin
 
 v.
 
 Michigan
 
 (1991) 501 U.S. 957 [111 S.Ct. 2680, 115 L.Ed.2d 836], in which a life sentence without possibility of parole for possessing 672 grams of cocaine was upheld.
 
 Harmelin
 
 produced five separate opinions. While seven justices supported a proportionality review under the Eighth Amendment, only four favored application of all three factors cited in
 
 Solem.
 

 In
 
 Harmelin,
 
 Justice Scalia, joined by Chief Justice Rehnquist, concluded
 
 Solem
 
 was wrongly decided and the Eighth Amendment contained no proportionality guarantee.
 
 {Harmelin
 
 v.
 
 Michigan, supra,
 
 501 U.S. at p. 965 [111 S.Ct. at p. 2686, 115 L.Ed.2d at p. 846].) Justice Kennedy, joined by Justices O’Connor and Souter, found the Eighth Amendment encompassed “a narrow proportionality principle”
 
 {id.
 
 at p. 997 [111 S.Ct. atp. 2702, 115 L.Ed.2d at p. 866]) and “does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are ‘grossly disproportionate’ to the crime.”
 
 {Harmelin
 
 v.
 
 Michigan, supra,
 
 501 U.S. at p. 1001 [111 S.Ct. at p. 2705, 115 L.Ed.2d at p. 869] (opn. of Kennedy, J.).)
 

 
 *806
 
 Consideration of the first factor identified in
 
 Solem
 
 v.
 
 Helm, supra,
 
 463 U.S. 277 [103 S.Ct. 3001, 77 L.Ed.2d 637] was sufficient to uphold the constitutionality of the defendant’s sentence; intra- and interjurisdictional analyses are appropriate only in rare cases.
 
 (Harmelin
 
 v.
 
 Michigan, supra,
 
 501 U.S. at pp. 1004-1005 [111 S.Ct. at pp. 2706-2707, 115 L.Ed.2d at p. 871].) The defendant in
 
 Harmelin
 
 was lawfully sentenced to life without parole (LWOP) for possessing a large quantity of drugs. Defendant here, a forcible rapist, received a lesser sentence. Defendant’s sentence is not “grossly disproportionate” to defendant’s more serious crimes.
 

 Moreover, in
 
 Solem
 
 v.
 
 Helm, supra,
 
 463 U.S. at page 296 [103 S.Ct. at pages 3012-3013, 77 L.Ed.2d at page 653], the court focused on the nonviolent nature of both the defendant’s current offense of uttering a “ ‘no account’ ” check (“ ‘one of the most passive felonies a person could commit’ ”) and his prior offenses. The majority acknowledged a life sentence for other violent criminals would pass constitutional muster.
 
 (Id.
 
 at p. 299, fn. 26 [103 S.Ct. at p. 3014, 77 L.Ed.2d at p. 655].) Therefore, even under
 
 Solem,
 
 defendant’s sentence does not violate the Eighth Amendment.
 

 2.
 
 The California standard.
 

 Under
 
 In re Lynch
 
 (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], a punishment may violate the California Constitution “if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.”
 
 (Id.
 
 at p. 424, fn. omitted.) To decide this question we must first examine “the nature of the offense and the offender, with particular regard to the degree of danger which both present to society”; then we must compare the challenged penalty to “punishment prescribed in the same jurisdiction for other more serious offenses”; finally, we must compare the challenged penalty to “punishment prescribed for the same offense in other jurisdictions.”
 
 (People
 
 v.
 
 Thompson
 
 (1994) 24 Cal.App.4th 299, 304 [29 Cal.Rptr.2d 847].) In examining “the nature of the offense and the offender,” we must consider not only the offense as defined by the Legislature but also “the facts of the crime in question” (including its motive, its maimer of commission, the extent of the defendant’s involvement, and the consequences of his acts); we must also consider the defendant’s individual culpability in light of his age, prior criminality, personal characteristics, and state of mind.
 
 (People
 
 v.
 
 Thompson, supra,
 
 24 Cal.App.4th at p. 305, citing
 
 People
 
 v.
 
 Dillon
 
 (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697].)
 

 Applying the first prong of the
 
 Lynch-Dillon
 
 test does not produce an outcome favorable to defendant. It is true, as the trial court found, that
 
 *807
 
 defendant had an insignificant prior record consisting only of “DUI” offenses (driving under the influence), that he had led a productive life as a husband and father, and that his blood-alcohol level, though not a defense, had some tendency to mitigate the gravity of his conduct. But, as the trial court also found, defendant’s crimes were extremely serious and dangerous to society in themselves. Furthermore, they were aggravated by numerous circumstances: the element of planning shown by his decision to invade a home which he had found out how to enter surreptitiously earlier that day, the callousness of choosing to prey on a sleeping victim with a small daughter whose presence he knew of, the deliberation revealed by his systematic preparations (obtaining a knife from one room and a disguise from another, carefully stripping and putting his clothes down where he could easily have retrieved them if surprised), the gratuitous violence he inflicted when angered, and his belief that everything he intended to do to the victim was “okay.” Moreover, it was only by chance that he did not inflict far more serious injury on the victim, either through the act of rape itself or through use of the knife with which he had equipped himself.
 

 Defendant fares no better under the second prong of the
 
 Lynch-Dillon
 
 test. He argues that his penalty under section 667.61 is harsher than that imposed in California for any type of unlawful killing short of first degree murder or for any type of sexual offense (including a violation of section 261, subdivision (a)(2)) not committed in the course of a first degree burglary. However, this argument ignores the fact that defendant’s acts involved both the commission of more than one kind of offense (rape and first degree burglary) and the commission of one offense for the purpose of committing another. The penalties for single offenses, such as those defendant cites, cannot properly be compared to those for multiple offenses—especially where, as here, one offense was committed in order to commit another. Moreover, the gravity of the two crimes committed by defendant (burglary and rape) is greater than the sum of their parts: being raped in her own home is a woman’s worst nightmare.
 

 Furthermore, “[bjecause it is the Legislature which determines the appropriate penalty for criminal offenses, defendant must overcome a ‘considerable burden’ in convincing us his sentence was disproportionate to his level of culpability.”
 
 (People
 
 v.
 
 Weddle
 
 (1991) 1 Cal.App.4th 1190, 1196-1197 [2 Cal.Rptr.2d 714].) The Legislature has chosen to make other offenses not involving homicide punishable by life imprisonment without possibility of parole: kidnapping for the purpose of ransom, extortion or robbery with bodily harm short of death (§ 209, subd. (a)) and attempted train wrecking
 
 *808
 
 (§ 218).
 
 [9]
 
 Such sentences have been found not to constitute cruel or unusual punishment because the Legislature could reasonably decide that crimes which involve an inherent danger to the life of the victim are particularly heinous even if no death occurs.
 
 (People
 
 v.
 
 Chacon
 
 (1995) 37 Cal.App.4th 52, 64 [43 Cal.Rptr .2d 434] [aggravated kidnapping for ransom];
 
 People
 
 v.
 
 Castillo
 
 (1991) 233 Cal.App.3d 36, 66 [284 Cal.Rptr. 382] [same];
 
 People
 
 v.
 
 Ordonez
 
 (1991) 226 Cal.App.3d 1207, 1237 [277 Cal.Rptr. 382] [same].) Both of the offenses that bring defendant within section 667.61 fit this description. Our Supreme Court has held that “burglary of a residence” could properly be classified as a serious felony for enhancement purposes (§ 1192.7, subd. (c)(18)) because of its dangerousness.
 
 (People
 
 v.
 
 Jackson
 
 (1985) 37 Cal.3d 826, 832 [210 Cal.Rptr. 623, 694 P.2d 736]. See also
 
 People
 
 v.
 
 Lewis
 
 (1969) 274 Cal.App.2d 912, 920 [79 Cal.Rptr. 650] [first degree burglary dangerous enough to merit severe punishment without any aggravating factors].) The commission of rape by means of “force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another” (§261, subd. (a)(2)) self-evidently entails a threat to the life of the victim. A fortiori, if offenses such as aggravated kidnapping for ransom and attempted train wrecking, even absent death, may be punished by LWOP without offending California’s bar against cruel or unusual punishment, it cannot offend that constitutional provision to punish the combination of offenses defendant committed by a life sentence with the possibility of parole.
 

 Defendant also has the burden of proving that “. . . the punishment prescribed for his offense, as compared to that imposed for similar offenses in other jurisdictions, is unconstitutional under the third prong of [the
 
 Lynch-Dillon
 
 test].”
 
 (In re DeBeque
 
 (1989) 212 Cal.App.3d 241, 255 [260 Cal.Rptr. 441].) He has made no showing on this point; thus he has failed to meet his burden. We note, however, that a federal court, applying the then-governing federal test for cruel and unusual punishment set out in
 
 Solem
 
 v.
 
 Helm, supra,
 
 463 U.S. at pp. 291-292 [103 S.Ct. at pp. 3010-3011, 77 L.Ed.2d at pp. 649-650] (which required the same sort of three-step evaluation as the
 
 Lynch-Dillon
 
 test), rejected an Eighth Amendment attack on Louisiana’s mandatory sentence of LWOP for “aggravated rape” because at least four other jurisdictions provided for life sentences for rape.
 
 [10]
 

 (Edwards
 
 v.
 
 Butler
 
 (5th Cir. 1989) 882 F.2d 160, 167.) In light of this fact, we see no possibility that a sentence of life with possibility of parole for rape in
 
 *809
 
 the course of a first degree burglary performed with the intent to commit that rape is disproportionately harsh compared to the punishment other jurisdictions might mete out for the same battery of offenses.
 
 [11]
 

 For all the above reasons, defendant’s sentence is not cruel or unusual under the California standard.
 

 IV
 

 Defendant also contends that section 667.61 as applied violates the principle of equal protection of the laws (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)) because there is no justification for treating him far more harshly than a rapist who did not commit his crime in the course of a burglary.
 
 [12]
 
 This contention fails because defendant has not shown that he was treated more harshly than other similarly situated persons.
 
 (People
 
 v.
 
 Jacobs
 
 (1992) 6 Cal.App.4th 101, 103 [7 Cal.Rptr.2d 781].) Contrary to defendant’s assertion, the offender to whom he compares himself has not been convicted of “the same crime” as himself. Rape is one crime; rape in the commission of a first degree burglary is two.
 
 [13]
 
 Defendant seeks to evade this obvious fact by referring euphemistically to his first degree burglary as “[the] conditions [under which] the crime [of rape] occurred.” This rhetorical ploy cannot turn two crimes—rape and first degree burglary—into one.
 

 Furthermore, as noted, first degree burglary is a serious and dangerous crime in itself, meriting severe punishment regardless of whether additional aggravating circumstances exist.
 
 (People
 
 v.
 
 Lewis, supra, 21A
 
 Cal.App.2d at p. 920.) Defendant’s bare assertion that there can be no justification for treating him more harshly than a “simple” rapist fails for this reason as well.
 

 V, VI
 
 *
 

 
 *810
 
 VII
 

 Each party contends that the trial court erred as to an enhancement. Defendant contends that the enhancements pursuant to section 12022.3, subdivision (b), on counts 4 and 5 must be stricken because section 1170.1, subdivision (a), does not include section 12022.3, subdivision (b), on its list of permissible enhancements on subordinate terms.
 
 [15]
 
 The People contend, on the contrary, that we must modify the eight-month enhancement on count 5 to a full-term two-year enhancement because the applicable statute does not authorize the trial court to reduce enhancements imposed thereunder. We disagree with defendant and agree with the People.
 

 1.
 
 Defendant’s contention.
 

 Defendant’s contention fails because the general rule of section 1170.1, subdivision (a), on which he relies, is trumped by the more specific rule of section 1170.1, subdivision (i): “For any violation of paragraph (2) . . . of subdivision (a) of Section 261 . . .the number of enhancements which may be imposed shall not be limited, regardless of whether the enhancements are pursuant to this or some other section of law.
 
 Each of the enhancements shall be a full and separately served enhancement
 
 and shall not be merged with any term or with any other enhancement.” (Italics added.) This provision was enacted to nullify, as to violations of section 261, subdivision (a)(2), the general limitation on enhancements stated in section 1170.1, subdivision (a).
 
 (People
 
 v.
 
 Tassell
 
 (1984) 36 Cal.3d 77, 91 [201 Cal.Rptr. 567, 679 P.2d 1] [overruled on another point in
 
 People
 
 v.
 
 Ewoldt
 
 (1994) 7 Cal.4th 380, 401 (27 Cal.Rptr.2d 646, 867 P.2d 757)].) Contrary to defendant’s assertion, there is no “apparent conflict” between subdivisions (a) and (i) of section 1170.1 which would justify invoking the “rule of lenity” on his behalf so as to reduce the full-term enhancements which subdivision (i) was plainly intended to require.
 

 2.
 
 The People’s contention.
 

 Pointing to the mandate of section 1170.1, subdivision (i), that full-term enhancements be imposed for all violations of section 261, subdivision (a)(2), the People argue that the trial court’s reduction of the enhancement
 
 *811
 
 on count 5 to one third the midterm was unauthorized.
 
 [16]
 
 Therefore they ask us to modify the judgment to impose the full two-year enhancement on that count. We shall do so.
 

 If a trial court imposes a sentence unauthorized by law, a reviewing court may correct that sentence whenever the error is called to the court’s attention. (P
 
 eople
 
 v.
 
 Serrato
 
 (1973) 9 Cal.3d 753, 763 [109 Cal.Rptr. 65, 512 P.2d 289].) Defendant in his reply brief makes no argument that the sentence imposed here was permissible in light of the clear mandate of section 1170.1, subdivision (i) (aside from his erroneous claim that section 1170.1, subdivision (a), rather than subdivision (i), controls). Instead he argues that the People have waived their claim of error, either because they failed to raise it below at the time of sentencing (see
 
 People
 
 v.
 
 Scott
 
 (1994) 9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040]) or because they have not raised it “appropriately” in this court by a People’s appeal.
 
 (People
 
 v.
 
 James
 
 (1985) 170 Cal.App.3d 164, 167-168, fn. 1 [216 Cal.Rptr. 24].) Defendant’s waiver arguments fail.
 

 First, the waiver rule of
 
 Scott
 
 does not apply because the court in
 
 Scott
 
 expressly excluded unauthorized sentences from the scope of that rule.
 
 (People
 
 v.
 
 Scott, supra, 9
 
 Cal.4th at p. 354.) Second, defendant’s authority for the proposition that the People can raise unauthorized-sentence claims only on their own appeal
 
 (People
 
 v.
 
 James, supra,
 
 170 Cal.App.3d 164) has not been followed on this point in any other published decision, and (as defendant candidly acknowledges) more recent authority has tacitly rejected its holding.
 
 (People
 
 v.
 
 Rowland
 
 (1988) 206 Cal.App.3d 119, 126 [253 Cal.Rptr. 190]; see also
 
 People
 
 v.
 
 Benton
 
 (1979) 100 Cal.App.3d 92, 102 [161 Cal.Rptr. 12] [cited with approval in
 
 Rowland].)
 
 Furthermore, the holding of
 
 James
 
 illogically abridges the clear and simple rule of
 
 Serrato:
 
 If we may correct unauthorized sentences whenever they come to our attention, it must follow that any means by which the error is called to our attention are “appropriate.”
 
 [17]
 
 Therefore we conclude that
 
 James
 
 was wrongly decided on this point.
 

 Under our inherent authority to correct an unauthorized sentence
 
 (People
 
 v.
 
 Serrato, supra, 9
 
 Cal.3d at p. 763), we modify the judgment to change the enhancement on count 5 from eight months to two years.
 

 
 *812
 
 Disposition
 

 The sentence is modified to increase the enhancement on count 5 to two years. As modified, the judgment is affirmed. The trial court shall prepare an amended abstract of judgment reflecting this modification and shall furnish a copy to the Department of Corrections.
 

 Sparks, Acting P. J., and Morrison, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied September 17, 1997.
 

 [1]
 

 All subsequent section references are to the Penal Code unless otherwise stated.
 

 [2]
 

 Sentences imposed on counts 1 and 2 were stayed. (§ 654.)
 

 [3]
 

 All further dates given are in 1995 unless otherwise stated.
 

 [4]
 

 The “mask” was actually a pair of Angelina’s panties, which defendant had obtained from her washer or dryer after surreptitiously entering her residence.
 

 *
 

 See footnote,
 
 ante,
 
 page 797.
 

 [6]
 

 Section 261, subdivision (a)(2), provides: “Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: ... [SO ... Where it is accomplished against a person’s will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another.”
 

 [7]
 

 Section 460, subdivision (a), provides in part: “Every burglary of an inhabited dwelling house ... is burglary of the first degree.”
 

 [8]
 

 The amended information accused defendant of coming within both subdivisions (d)(4) and (e)(2) of section 667.61. Subdivision (e)(2) provides that if a defendant commits rape in the course of a burglary, but without having intended the rape when he entered, his punishment is 15 years to life. Because the jury found that defendant intended to commit rape when he committed the burglary of the victim’s residence, subdivision (e)(2) is inapplicable.
 

 [9]
 

 Section 219 makes actual train wrecking punishable by LWOP if death proximately results, but punishable by life imprisonment with possibility of parole if no death occurs.
 

 [10]
 

 “Aggravated rape” under the Louisiana statute meant anal or vaginal intercourse without the victim’s consent “when the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.” (La. Rev. Stat. Ann. § 14:42A(2) (West 1986).)
 

 [11]
 

 With little if any analysis, defendant sets out a laundry list of California and federal cases, mostly dating from the 1970’s, in which courts found particular punishments to be cruel and/or unusual. Because the resolution of this issue in any given case, under either the federal or the California test, depends first of all on the defendant’s individual culpability, these cases’ discussions of different punishments meted out to different defendants under different statutory schemes do not help us significantly in deciding the issue as to defendant. Therefore we decline to discuss defendant’s cited cases.
 

 [12]
 

 As defendant points out, the sentencing triad for violation of section 261, subdivision (a)(2), is three, six, or eight years.
 

 [13]
 

 For the moment we disregard the fact that defendant was actually convicted of
 
 five
 
 felonies in this case.
 

 *
 

 See footnote,
 
 ante,
 
 page 797.
 

 [15]
 

 The final sentence of section 1170.1, subdivision (a), provides: “The subordinate term for each consecutive offense which is a ‘violent felony’ . . . shall include one-third of any enhancements imposed pursuant to Section 667.15, 667.8, 667.83, 667.85, 12022, 12022.2, 12022.4, 12202.5, 12022.55, 12022.7, 12022.75, or 12022.9.’’ As defendant points out, section 12022.3, subdivision (b), is not mentioned here.
 

 [16]
 

 The record of the sentencing hearing shows that the trial court and the parties apparently overlooked subdivision (i), discussing only subdivision (a).
 

 [17]
 

 The court
 
 in James
 
 purported to rely on
 
 Wilson
 
 v.
 
 Superior Court
 
 (1980) 108 Cal.App.3d 816, 818 [166 Cal.Rptr. 795], and
 
 People
 
 v.
 
 Espinoza
 
 (1979) 99 Cal.App.3d 59, 68 [159 Cal.Rptr. 894] as authority for its rule that such matters could be raised only on People’s appeals.
 
 (People
 
 v.
 
 James, supra,
 
 170 Cal.App.3d at p. 168, fn. 1.) However, neither
 
 Wilson
 
 nor
 
 Espinoza
 
 at the passages cited holds that only a People’s appeal constitutes an “appropriate” way for the People to point out an unauthorized sentence.