Filed 7/7/14  P. v. George CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TOMMY S. GEORGE,<br><br>    Defendant and Appellant. | B249680<br><br>(Los Angeles County<br>Super. Ct. No. PA071607) |

APPEAL from a judgment of the Superior Court of Los Angeles County. David B. Gelfound, Judge.  Affirmed.

A. William Bartz, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and William N. Frank, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Tommy S. George (George) was convicted of committing a lewd act upon a child. (Pen. Code, § 288, subd. (a).)[1] The trial court found, within the meaning of section 667.61, subdivisions (a) and (b), that George had suffered a prior conviction for the same offense. (§ 288, subd. (a).) Also, it found that he had suffered one prior serious or violent conviction under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and a prior conviction of a serious felony within the meaning of section 667, subdivision (a)(1). He was sentenced to 55 years to life in state prison, calculated as follows: 25 years to life for the conviction as prescribed by section 667.61, subdivisions (a) and (d); an additional 25 years to life due to the doubling provisions set forth in sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d); and five years pursuant to section 667, subdivision (a)(1), to run consecutive. On appeal, George contends that his sentence is cruel and unusual punishment under the United States and California Constitutions.

We find no error and affirm.

## FACTS

### Prior Criminal History

In 1994, George was convicted of grand theft. From 2002 to 2009, he suffered a series of convictions for driving while intoxicated, driving with a suspended license and being intoxicated while in public. In 2006, he was convicted of possession of a controlled substance (methamphetamine) in violation of Health and Safety Code section 11550, subdivision (a). He was convicted of grand theft from person in 2007 and grand theft in 2008.

In 2010, he was convicted of committing a lewd act on a child in violation of section 288, subdivision (a).[2]

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    George admitted these priors.

**Prosecution Evidence**

In her husband's truck, A.C. drove her daughter Sandy F. to the intersection of Nordhoff Street and Van Nuys Boulevard and parked. They were accompanied by Rodolfo G. and his grandson, Raul H. While the men went to a check cashing store, A.C. and Sandy F. stayed in the truck with the doors open. George approached and said that Sandy F. was pretty. After he asked how old Sandy F. was, he said he had a niece who was the same age and that they looked alike. He asked if he could give Sandy F. a hug. A.C. did not answer. Leaning into the back seat, he placed an arm around Sandy F., put his hand under her dress and touched her vagina over her underwear.

A.C. got out of the truck, pulled George's shirt from the back and started hitting him. She was crying, screaming and telling him to leave Sandy F. alone, but he would not let go at first. Eventually, he let go and held up his fists about a foot away from A.C. Then he walked away.

Rodolfo G. and Raul H. witnessed the altercation from the corner, and Rodolfo G. asked George what he was doing. He said, "Oh, it was nothing. It was just a hug. I didn't do anything."

A police officer detained George. He spontaneously stated that he thought the girl looked like his niece and gave her a hug. Initially, he gave a false name, saying he was Paul Wilson. He said he was working in the area. His speech was slurred, and he appeared to be intoxicated.

George was arrested.

**Defense Evidence**

On the day of the incident, George drank a 24-ounce can of beer in about 10 minutes. He was not intoxicated.

George saw a truck with a mother sitting in the front and a girl that looked just like his niece, who was six years old. After saying hello, he said the girl looked like his niece, who he had helped his sister raise. The mother and he spoke for a few minutes, and the mother said that the girl was seven years old. At that point, he said the girl was cute and

3

asked if he could give her a hug. The mother did not respond, but she smiled. So did the girl.

George gave the girl a hug with both his arms around her shoulders. It lasted about two or three seconds. The mother "started flipping out," cussing in Spanish, hitting him and pulling his shirt. He never clenched his fists. He asked the mother, "What's your problem?"

**Conviction; Sentencing**

The trial court convicted George of violating section 288, subdivision (a). It found the special allegations true. George filed a motion to declare section 667.61 unconstitutional as applied to his case on the theory that it qualified as cruel and unusual punishment. He relied on the Eighth Amendment to the United States Constitution and article 1, section 17 of the California Constitution. The motion was denied.

George was sentenced to 55 years to life.

This timely appeal followed.

**DISCUSSION**

George posits that his sentence is cruel and unusual punishment because he was 37 years old at sentencing and therefore 55 years to life is tantamount to a life sentence that is contrary to the "evolving standards of decency that mark the progress of a maturing society." (*Trop v. Dulles* (1958) 356 U.S. 86, 101.) This constitutional challenge presents a question of law subject to our de novo review. (*Vo v. City of Garden Grove* (2004) 115 Cal.App.4th 425, 433.)

**I. Applicable Legal Principles.**

"The prohibition against 'cruel and unusual punishments,' like other expansive language in the Constitution, must be interpreted according to its text, by considering history, tradition, and precedent, and with due regard for its purpose and function in the constitutional design." (*Roper v. Simmons* (2005) 543 U.S. 551, 560–561.) According to the United States Supreme Court, it "established the propriety and affirmed the necessity of referring to 'the evolving standards of decency that mark the progress of a maturing

society' to determine which punishments are so disproportionate as to be cruel and unusual. [Citation.]" (*Id*. at p. 561.)

Federal precedent explains that a sentence is cruel and unusual punishment under the Eighth Amendment if it is grossly disproportionate to the crime. (*Graham v. Florida* (2010) 560 U.S. 48, 59–60.) When analyzing the issue, a court must consider "all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." (*Id*. at p. 59.) It should begin "by comparing the gravity of the offense and the severity of the sentence. [Citation.]" (*Id*. at p. 60.) "'[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation.] If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual. [Citation.]" (*Ibid*.) "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." (*Lockyer v. Andrade* (2003) 538 U.S. 63, 77 (*Andrade*); *Ewing v. California* (2003) 538 U.S. 11, 30 [noting that it is only in a rare case that there is an inference of disproportionality, and then holding that a sentence of 25 years to life for felony grand theft under California's Three Strikes law was not grossly disproportionate].)

"A punishment may violate article I, section 17 of the California Constitution if 'it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.]" (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 199 (*Alvarado*) [15 years to life under section 667.61 for rape during burglary not cruel and unusual punishment.) In California, the analytical approach requires a court "to examine the nature of the offense and the nature of the offender. [Citation.] With respect to the nature of the offense, the court considers the offense not only in the abstract but also the facts of the crime in the particular case, 'including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts.' [Citation.] With respect to the nature of

5

the particular person before the court, the question is whether the punishment is 'grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.' [Citation.]" (*People v. Young* (1992) 11 Cal.App.4th 1299, 1308.)

## II. George's Sentence.

Section 667.61, sometimes referred to as the One Strike law (*People v. Anderson* (2009) 47 Cal.4th 92, 99), "mandates indeterminate sentences of 15 to 25 years to life for specified sex offenses that are committed under one or more 'aggravating circumstances,' . . . . The purpose of the One Strike law is 'to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction,' 'where the nature or method of the sex offense "place[d] the victim in a position of *elevated vulnerability*." [Citation.]' [Citation.]" (*Alvarado*, *supra*, 87 Cal.App.4th at p. 186.) One of the specified sex offenses under subdivision (c) is a lewd act upon a child. Pursuant to the dictates of section 667.61, subdivisions (a) and (d)(1), George received a mandatory sentence of 25 years to life because he had previously been convicted of an offense specified in subdivision (c). In other words, his 2010 conviction was an aggravating circumstance under section 667.61.

Next, George's sentence was doubled because of his prior conviction for violating section 288, subdivision (a) in 2010. A violation of section 288, subdivision (a) is one of the offenses listed as a violent felony pursuant to section 667.5, subdivision (c)(6), and that list is incorporated into section 667, subdivision (d)(1) and section 1170.12, subdivision (b)(1). Section 667, subdivision (e)(1) provides: "If a defendant has one prior serious and/or violent felony conviction as defined in subdivision (d) . . . , the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction." Section 1170.12, subdivision (c)(1) provides the same.

Finally, George's sentence was enhanced five years under section 667, subdivision (a)(1) because he had previously been convicted of a lewd act upon a child, a serious felony as defined by section 1192.7, subdivision (c)(6).

6

**III. No Gross Disportionality.**

In our view, the sentence of 55 years to life for committing a lewd act on a child is not grossly disproportional, nor does it shock the conscience or offend fundamental notions of human dignity. To reach this conclusion, we have compared the severity of the offense to the severity of the sentence and, additionally, we have examined the nature of the offender.

Committing a lewd act upon a child is one of the most morally repugnant offenses in civilized society. And it has been recognized that there is a high rate of recidivism for child molesters. (*People v. Acuna* (2000) 77 Cal.App.4th 1056, 1061 [rejecting an equal protection challenge to the statutory ban on expunging a conviction for committing a lewd act on a child].) George attempts to minimize his crime, calling it "the most minimal basis for a child molestation conviction that ever occurred in California." We reject his attempt. This is a heinous crime that can leave a victim with deep psychological wounds for a lifetime.

George brazenly committed a lewd act upon a seven-year old child while in public and in front of the child's mother. He robbed the victim of personal safety, sanctity and well-being. Due to his age and prior conviction for committing a lewd act upon a child, the inference is that George knew his impulse to molest the victim was wrong but did it anyway.[3] That inference is bolstered by his use of a false name when he was first questioned by the police. He was intoxicated during the offense, and had a history of substance abuse, a circumstance suggesting that he knowingly allowed alcohol to impair his judgment. When the mother tried to pull him away, he would not let go of the child at first. After letting go, he did not act ashamed but rather raised his fists, exhibiting callousness and a concern for himself above all others. According to George, he asked the mother what her problem was, suggesting that he did not believe that his heinous action should be questioned. At trial, he denied his offense but acknowledged that he

---

[3]     At the sentencing hearing, George's counsel stated: "And the prior, which was the basis for triggering [section 667], involved similar conduct, touching of the underwear of a young girl."

asked to hug Sandy F. Subsequent to that, he testified: "I know it was very stupid. I wasn't using my better judgment." These facts reveal that George had no appreciation or remorse regarding the severity of his crime, and he poses a threat to the most vulnerable members of our community.

Our conclusion that George's sentence passes constitutional scrutiny is amply supported by case law. (*People v. Crooks* (1997) 55 Cal.App.4th 797 [a sentence under section 667.61 not cruel and unusual punishment for rape committed during burglary]; (*People v. Meneses* (2011) 193 Cal.App.4th 1087, 1089 [a sentence under section 667.61 not cruel and unusual punishment for lewd act upon a child who got pregnant and therefore suffered great bodily injury]; *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1273 [a sentence under section 667.61 not cruel and unusual punishment for rape committed during burglary].)

Even if there was an inference of gross disproportionality, we would still uphold the sentence because George does not argue that the inference is corroborated by comparisons to sentences meted out for other offenses in California or the same offense in other jurisdictions.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
    ASHMANN-GERST

We concur:

_____, P. J.
  BOREN

_____, J.
  CHAVEZ