Filed 2/28/25  P. v. Juarez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CARLOS FRANCISCO JUAREZ,<br><br>    Defendant and Appellant. | G063038<br><br>(Super. Ct. No. 19HF0488)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Andre Manssourian, Judge. Affirmed.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa

Mandel, Seth M. Friedman, and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

* * *

Carlos Francisco Juarez was convicted of 21 counts of sexual crimes against multiple girls. The trial court sentenced Juarez to consecutive terms of 15 years to life on 10 of these counts.

Juarez contends that the trial court abused its discretion by admitting evidence of Juarez's marital infidelity with A.J., one of the victims. Juarez also argues that his sentence violates the federal and state prohibitions against cruel and unusual punishment. We reject both arguments and affirm the judgment.

FACTS

Juarez was a basketball coach for middle and high school age girls. He operated a club team, the SoCal Swoosh, and gave private basketball lessons. Juarez's first ex-wife, W.J., heard that Juarez was engaging in inappropriate behavior with various minor female basketball players. W.J. therefore reached out to several former players. When players told W.J. that Juarez had acted improperly, she went with them to report him to the police. Six women eventually came forward and reported sexual offenses committed by Juarez which occurred when they were in middle school or high school.

Juarez was charged with criminal misconduct involving four of the women: 10 counts of lewd conduct on a child under the age of 14 (Pen. Code,[1] § 288, subd. (a), counts 1-7, 15-17); seven counts of lewd conduct on a

_____

[1] All further statutory references are to the Penal Code unless otherwise specified.

2

child between the ages of 14 and 15 (§ 288, subd. (c)(1), counts 8-9, 11-13, 18-19); two counts of oral copulation of a child under the age of 16 (§ 288a, subd. (b)(2), counts 10 and 21); and two counts of sexual penetration by foreign object of a minor under the age of 16 (§ 289, subd. (i), counts 14 and 20). The information alleged, as to counts 1-7 and 15-17, that those offenses involved more than one victim (§ 667.61, subd. (b)(e)(4)).[2] As to all counts, the information also alleged Juarez took advantage of a position of trust and confidence to commit the crimes (Cal. Rules of Court, rule 4.421(a)(11)).

A jury convicted Juarez of all counts; it also found the multiple victim allegation to be true. The trial court found true the factor in aggravation. The court sentenced Juarez to an indeterminate term of 150 years to life, comprised of consecutive sentences of 15 years to life on counts 1-7 and 15-17. The court imposed the middle term of two years on counts 8-14 and 18-21 and ordered the sentences to run concurrently with the indeterminate term.

DISCUSSION

I.

ADMISSION OF EVIDENCE OF JUAREZ'S MARITAL INFIDELITY

Juarez contends the trial court erred in admitting testimony by his second ex-wife, K.N., about his infidelity with A.J., one of Juarez's former youth basketball players, because such evidence was irrelevant and prejudicial. We conclude the trial court did not abuse its discretion in admitting this evidence.

---

[2] The information erroneously refers to subdivision (e)(5) of section 667.61.

3

*A.     Factual Background*

      1.  Juarez's Ex-Wife's Testimony

Juarez's ex-wife, K.N., was married to Juarez from 2014 to 2018. When she testified, the prosecutor asked her, "At any time prior to your separation in, I think, 2017, did you ever suspect that your then-husband might be unfaithful to you?" Defense counsel objected on relevance grounds. The court overruled the objection. K.N. then testified she suspected Juarez was unfaithful: "There was just a lot of time that was unaccounted for. It just didn't make sense, his explanations of where he was and what he was doing."

Based upon this suspicion, K.N. followed Juarez one evening in 2017 to A.J.'s apartment complex, where she observed Juarez and A.J. sitting together in a hot tub. K.N. knew Juarez had coached A.J.'s team at Costa Mesa High School. K.N. further confirmed her suspicions by reviewing the bill for their shared cell phone plan, which showed numerous text messages from Juarez to A.J.

Neither the prosecution nor the defense referred to K.N.'s testimony regarding her suspicions of Juarez's infidelity during closing argument.

      2.  A.J.'s Testimony

A.J. testified at trial regarding uncharged sexual crimes pursuant to Evidence Code section 1108, which permits admission of evidence of a defendant's commission of other offenses in certain circumstances. A.J. played basketball on Juarez's team in a summer league after her junior year of high school when she was 17. Because A.J. "didn't have a good home life," she often preferred to stay after practice to shoot baskets. Juarez would also stay to talk to A.J., who trusted and looked up to him. Juarez and A.J. began

4

frequently texting, and Juarez began asking A.J. questions about her sexual and dating experience.

One day after practice, Juarez asked A.J. if she wanted to try kissing and she agreed. Juarez then began kissing A.J. almost every day. Around this time, A.J. performed oral sex on Juarez in his car. Juarez asked A.J. if she wanted to "have sex" and she agreed. Juarez picked a night when K.N. was out of town. He picked A.J. up on a side street near her house, took her to the home he shared with K.N., and had sexual intercourse with A.J. in his bedroom. This was A.J.'s first sexual experience.

During her senior year of high school when she was 17, A.J. had sexual intercourse with Juarez in a hotel room approximately eight to 10 times. A.J. testified they had sexual intercourse "four to five times a week," usually in Juarez's car. Juarez instructed A.J. not to tell anyone, telling her she was just "as guilty" as he was, and he would go to jail if anyone found out. She did not tell anyone because she did not want to "lose the one person [she] thought cared about [her]."

A.J. turned 18 shortly after she graduated from high school. The following year, police contacted A.J.'s former high school about inappropriate conduct between Juarez and A.J. Juarez told A.J. the police would be contacting her and instructed her to tell them "nothing happened" before she turned 18. A.J. agreed because she believed she was in a committed relationship with Juarez and viewed him as a "father figure."

Juarez and A.J. were still in a sexual relationship when he was arrested the following year. Following his arrest, Juarez moved in with A.J. and her mother. A.J. ended the relationship a few years later when she realized that it was "very unhealthy."

Police interviewed A.J. again in 2022 after Juarez's arrest. During the second interview, she told police that Juarez began sexually abusing her while she was in high school before she was 18.

During A.J.'s testimony, the prosecutor asked her whether K.N. had confronted her regarding her relationship with Juarez. A.J. testified that, when K.N. later approached her at her work, she lied, claiming that she was not the person K.N. had observed in the hot tub. A.J. further testified that K.N. "let it go pretty easily and she wasn't mad. She just told me that basically just to be careful and not to spend, like, any extra time around him. . . . She's like, 'He is a monster and I just don't want you to be involved with someone like that.'"

## B.    Standard of Review

"'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Relevant evidence is generally admissible at trial. (Evid. Code, § 350.)

Evidence Code section 352 nonetheless provides a court with "the discretion to 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'" (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1116 (*Nguyen*).) "'"""The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues."'"""" (*People v. Fruits* (2016) 247 Cal.App.4th 188, 205.)

6

A trial court's ruling on the admissibility of evidence under Evidence Code section 352 "is reviewed for abuse of discretion and will "'not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'"'" (*Nguyen, supra*, 184 Cal.App.4th at p. 1116; see *People v. Story* (2009) 45 Cal.4th 1282, 1295.) "[W]hen analyzing for an abuse of discretion, we cannot substitute our discretion for that of the trial court." (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 174.)

C.     *The Trial Court Did Not Abuse Its Discretion*

K.N.'s testimony was relevant because it tended to prove the uncharged crimes Juarez was alleged to have committed against A.J. As noted, in addition to charging Juarez with committing multiple sex crimes against four young girls, the prosecution introduced evidence related to uncharged sexual offenses against two others, including A.J. For the jury to be able to consider the uncharged offenses of statutory rape (§ 261.5) and oral copulation with a minor (§ 287, subd. (b)(1)), the prosecution had to prove Juarez committed these crimes by a preponderance of the evidence. K.N.'s testimony bolstered A.J.'s credibility regarding the conduct underlying these uncharged crimes.

Additionally, because Juarez's defense at trial was that each of the victims was lying, K.N.'s testimony was relevant to corroborate A.J.'s testimony regarding her interactions with Juarez.

Juarez argues that, even if K.N.'s testimony regarding his infidelity was relevant, it was inadmissible because it was unduly prejudicial as it "made him look like a 'bad person,' such that the jury was inclined to prejudge him based on behavior that was in no way criminal." We disagree.

7

K.N.'s testimony regarding Juarez's infidelity was brief and neither side mentioned it during closing argument. More importantly, the jury heard detailed testimony by six different women regarding Juarez's decade-long pattern of emotional manipulation, abuse of his position of trust as a basketball coach, and sexual abuse of young girls. Given this evidence, it is not reasonably likely that K.N.'s brief testimony regarding Juarez's infidelity unduly prejudiced the jury against him.

In any event, the trial court was in the best position to weigh the probative value of K.N.'s testimony regarding Juarez's infidelity against the possibility of undue prejudice and made a reasoned decision to admit the evidence. On this record, we cannot say the trial court abused its discretion.

D.     *The Evidence Did Not Render Juarez's Trial Fundamentally Unfair*

Juarez argues that admission of K.N.'s testimony regarding her suspicions of his marital infidelity violated his federal Fourteenth Amendment right to due process because it rendered his trial fundamentally unfair.

To prove a violation of his federal due process rights, Juarez must show that the erroneous admission of evidence resulted in an unfair trial. "The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." (*People v. Falsetta* (1999) 21 Cal.4th 903, 913.) Because the evidence was relevant and not unduly prejudicial, as discussed above, its admission did not render Juarez's trial fundamentally unfair. We therefore also reject Juarez's federal due process claim.

II.

CRUEL AND UNUSUAL PUNISHMENT

Juarez argues that his sentence of 10 consecutive terms of 15 years to life is cruel and unusual because it is disproportionate to the severity of the offenses and because he has no prior criminal history. Juarez challenges the punishment as applied to him under both the United States and California Constitutions. We conclude that Juarez has not met his burden to demonstrate that the sentence violated either the federal or state Constitutions and therefore affirm the sentence.

It is generally the exclusive role of the Legislature to determine appropriate penalties for criminal offenses. (*People v. Crooks* (1997) 55 Cal.App.4th 797, 807.) Thus, it is the defendant's "considerable burden" to convince an appellate court that the punishment imposed is disproportionate to his or her culpability. (*People v. Wingo* (1975) 14 Cal.3d 169, 174.)

1. The United States Constitution

The Eighth Amendment prohibits "cruel and unusual punishments." (U.S. Const., 8th Amend.) A sentence violates the federal Constitution if it is grossly disproportionate to the crime for which it is imposed. (*Graham v. Florida* (2010) 560 U.S. 48, 72.) A court compares "the gravity of the offense and the severity of the sentence" to determine whether a sentence is grossly disproportionate. (*Id.* at p. 60.) A sentence is grossly disproportionate only in an "'exceedingly rare'" and "'extreme' case." (*Lockyer v. Andrade* (2003) 538 U.S. 63, 73 (*Lockyer*).) A reviewing court must independently review whether a sentence meets this standard. (*United States v. Bajakajian* (1998) 524 U.S. 321, 336-337.)

The Supreme Court has repeatedly held that life sentences, even for low-level theft and drug offenses, are not cruel and unusual under the

federal Constitution. (See, e.g., *Lockyer, supra,* 538 U.S. at p. 77 [consecutive sentences of 25 years to life for two petty thefts with prior convictions did not violate the Eighth Amendment]; *Ewing v. California* (2003) 538 U.S. 11, 18-20 [sentence of 25 years to life for stealing three golf clubs]; *Harmelin v. Michigan* (1991) 501 U.S. 957, 961 [sentence of life without possibility of parole for possession of 672 grams of cocaine]; *Rummel v. Estelle* (1980) 445 U.S. 263, 268-285 [life sentence for credit card fraud, passing a forged check, and theft by false pretenses].)

Compared to other sentences for less serious crimes, we do not find Juarez's sentence of 10 consecutive terms of 15 years to life for 21 separate counts of sexual abuse of four minors to be grossly disproportionate to the gravity of the offenses.

2. The California Constitution

Article I, section 17, of the California Constitution also proscribes cruel or unusual punishment. A prison sentence violates article I, section 17, if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, superseded by statute on other grounds as stated in *People v. Caddick* (1984) 160 Cal.App.3d 46, 51 (*Lynch*).) To determine whether a sentence is disproportionate under our state Constitution, California courts generally weigh the following factors: (a) the nature of the offense and the offender, including the danger posed by both; (b) the punishment imposed compared to punishments for other offenses; and (c) the punishment imposed compared to other jurisdictions' punishments for the same offense. (*Id.* at pp. 425-429.)

The first *Lynch* factor weighs against Juarez. Courts evaluate the seriousness of the crime as well as the totality of the circumstances

10

surrounding the offense. (*People v. Em* (2009) 171 Cal.App.4th 964, 972.) Juarez's crimes are serious; he committed multiple sex crimes against six different girls, some as young as 12. (*Ashcroft v. The Free Speech Coalition* (2002) 535 U.S. 234, 244 ["The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people"].) His repeated offenses took place over the course of a decade. The trial court found that he took advantage of a position of trust and confidence as the victims' youth basketball coach. Given these serious circumstances, Juarez's lack of a prior criminal record does not alter our analysis that his sentence is proportionate. (*People v. Christensen* (2014) 229 Cal.App.4th 781, 807 [noting "the lack of a prior criminal record is not determinative"].)

The second *Lynch* factor also weighs against Juarez. A sentence of 15 years to life for each of 10 counts is not disproportionate when compared with other crimes that mandate similar sentences. (See, e.g., *People v. Meneses* (2011) 193 Cal.App.4th 1087, 1092-1094 [15 years to life for lewd act on a child].) Furthermore, Juarez's sentence was imposed not for one act upon a single victim, but rather for 21 counts of sexual crimes against four young girls. "The penalties for single offenses . . . cannot properly be compared to those for multiple offenses . . . ." (*People v. Crooks, supra*, 55 Cal.App.4th at p. 807.)

Regarding the third *Lynch* factor, Juarez has failed to provide any analysis of sentences for similar crimes in other jurisdictions. Because Juarez "makes no effort to compare his sentence with . . . punishments in other states for the same offense, . . . we take [it] as a concession that his sentence withstands [that] constitutional challenge . . . ." (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231.)

11

In conclusion, Juarez has failed to demonstrate that his sentence violates either the federal or California Constitutions' prohibition against cruel and unusual punishment.

## DISPOSITION

The judgment is affirmed.


GOETHALS, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.