Filed 12/27/13  P. v. Andrade CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B243965 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA376415) |
| v. | |
| DANIEL A. ANDRADE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael E. Pastor, Judge.  Affirmed with directions.

_____

Solouki & Savoy, Grant Joseph Savoy and Shoham J. Solouki for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

An information, dated December 23, 2010, charged Daniel A. Andrade with five counts: (1) kidnapping to commit rape (Pen. Code, § 209, subd. (b)(1)[1]); (2) kidnapping to commit robbery (§ 209, subd. (b)(1)); (3) forcible oral copulation (§ 288a, subd. (c)(2)(A)); (4) forcible rape (§ 261, subd. (a)(2)); and (5) second degree robbery (§ 211). As to counts 3 and 4, the information specially alleged that Andrade had kidnapped the victim such that he was subject to punishment under section 667.61, subdivisions (a) and (d)(2), and subdivisions (b) and (e)(1).[2] The jury found Andrade guilty on count 1 for kidnapping to commit rape, count 3 for forcible oral copulation and count 4 for forcible rape. It found him not guilty on count 2 for kidnapping to commit robbery, but guilty of the lesser included offense of kidnapping. It found him not guilty on count 5 for second degree robbery. The jury found true the special allegations as to counts 3 and 4 under section 667.61, subdivisions (a) and (d)(2), and subdivisions (b) and (e)(1). The trial court sentenced Andrade to a state prison term of 50 years to life, consisting of consecutive, 25-year-to-life terms for the convictions on counts 3 and 4.[3]

On appeal, Andrade contends that: (1) substantial evidence does not support the trial court's finding that the forcible oral copulation and the forcible rape occurred on separate occasions so as to mandate consecutive sentencing under section 667.6, subdivision (d); (2) the court failed to adequately state its reasons for exercising its

---

[1] Statutory references are to the Penal Code.

[2] Together section 667.61, subdivisions (a) and (d)(2), provide for a punishment of 25 years to life when, among other crimes, a rape under section 261, subdivision (a), or an oral copulation under section 288a, subdivision (c), is committed and "[t]he defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense . . . ." Together section 667.61, subdivisions (b) and (e)(1), provide for a punishment of 15 years to life when, among other crimes, a rape under section 261, subdivision (a), or an oral copulation under section 288a, subdivision (c), is committed and "[t]he defendant kidnapped the victim of the present offense . . . ."

[3] The trial court vacated the conviction on the lesser included offense of kidnapping in relation to count 2 and dismissed count 2. As to count 1 for kidnapping to commit rape, the court imposed a life term but stayed execution of it pursuant to section 654.

discretion in the alternative under section 667.6, subdivision (c), to impose consecutive sentences for the forcible oral copulation and forcible rape; (3) the court erred by failing to stay pursuant to section 654 execution of sentence on count 3 for forcible oral copulation; (4) substantial evidence does not support the jury's true finding on the special allegation under section 667.61, subdivision (d)(2), that his movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offenses in counts 3 and 4; and (5) his sentence of 50 years to life constitutes cruel and unusual punishment under both the federal and state Constitutions. We reject his contentions and thus affirm the judgment. We note that the abstract of judgment incorrectly states that the court imposed 25-year-to-life terms on counts 1 and 2, rather than on counts 3 and 4, and, therefore, direct the court to prepare a corrected abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

## DISCUSSION

1. *Substantial Evidence Supports Mandatory Consecutive Sentences Under Section 667.6, Subdivision (d), on Counts 3 and 4*

Under section 667.6, subdivision (d), "[a] full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e)[, including forcible oral copulation and forcible rape,] if the crimes involve separate victims or involve the same victim on separate occasions. [¶] In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (See *People v. Jones* (2001) 25 Cal.4th 98, 105 ["appropriate analysis for determining whether sex offenses occurred on 'separate occasions' [under § 667.6, subd. (d),] was whether the defendant had a reasonable opportunity for

3

reflection"].) "Once a trial judge has found under section 667.6, subdivision (d), that a defendant committed offenses on separate occasions, [the appellate court] may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior. [Citations.]" (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.)

The trial court concluded that consecutive sentences were mandated under section 667.6, subdivision (d), on count 3 for forcible oral copulation and count 4 for forcible rape, stating, "[T]he court's intention is focused on the issue about whether between the commission of one sex crime and another [Andrade] had a reasonable opportunity to reflect on his actions and nevertheless resumed sexually assaultive behavior. I have reviewed extensively the transcript and the notes and find as follows: [Andrade] initially forced [the victim] into his vehicle. In the process, he utilized a gun. He forced [the victim] to orally copulate him while [he] was driving. Significant time elapsed from the point where [the victim] began the forcible oral copulation of [Andrade] until the vehicle parked. The incident started at 41st Street and ended at 47th Street. During that timeframe, [the victim's] panties were in different positions. And importantly, after [Andrade] parked his vehicle at a distance of some 6 or so blocks from the beginning of the sexual assault, [Andrade] moved his position from the driver's seat to another area of the bench seat and placed [the victim] in a different position on top of him. But it simply wasn't a change of positions. It had to do with the position of her panties, her panties being originally up and then down and then pulling them up and then pulling them down again as [Andrade] . . . 'scooted over.' I don't agree that this is a . . . 'close call.' I think when one looks to the distance traveled, the fact [Andrade] was driving, stopped, parked, moved his position in the front, [the victim's] position was moved, her panties were moved, and [Andrade] during that timeframe was pointing to the head of [the victim] what appeared to be a gun to her demonstrates to me that between the time that [Andrade] ceased the forcible oral copulation and began the forcible rape, [he] definitely had a reasonable opportunity to reflect on his actions and nevertheless resumed sexually assaultive behavior. After traveling that distance with a gun to the head

4

of [the victim] and having forced her to engage in oral copulation, [Andrade] pulled over, stopped the vehicle, parked the vehicle, moved within the vehicle. [The victim's] position changed as did the issue of panties. That demonstrates to me unquestionably that this scenario falls within the mandatory consecutive sentencing provisions . . . ." Andrade contends the evidence is insufficient to support the court's determination that counts 3 and 4 were committed on separate occasions within the meaning of section 667.6, subdivision (d), such that the statute required mandatory consecutive sentences. We disagree.

According to the evidence, the oral copulation occurred while Andrade drove with the victim. The oral copulation ended when Andrade stopped his truck after hearing from the victim that she was going to meet her mother at an automotive shop near where he had driven his truck. With the truck now parked, Andrade told the victim to pull her underwear back down, as she had pulled it up after Andrade had stopped touching her vagina and had driven away with her in the truck. When she pulled her underwear down, "[h]e scooted over to [her] side [of the truck] and grabbed [her] from [her] waist and put [her] on top of his lap." "Then . . . he put his penis inside [her] vagina and started moving [her] up and down. And he was moving." "Then . . . he ejaculated inside of [her], and [she] immediately moved and pulled [her] underwear back up." This evidence demonstrates that in between the acts of oral copulation and sexual intercourse Andrade parked his truck, told the victim to pull down her underwear, changed his position in the vehicle, moved the victim from her place in the vehicle by grabbing her and putting her on top of him and then forced sexual intercourse with her. Based on this evidence, we cannot say that no reasonable trier of fact could have decided that Andrade had a reasonable opportunity for reflection after the oral copulation stopped and he began sexual intercourse with the victim. (*People v. Garza*, *supra*, 107 Cal.App.4th at p. 1092.)

The cases on which Andrade relies to challenge the trial court's finding that the forcible oral copulation and the forcible rape occurred on separate occasions are distinguishable. In *People v. Corona* (1988) 206 Cal.App.3d 13, 17-18, the appellate court upheld a determination that the defendant had committed two counts of rape on

separate occasions when, after the first rape, he "ceased his sexually assaultive behavior, left the car, returned after a minute or two and resumed sexually assaultive behavior[,]" but, as conceded by the People, reversed a determination of separate occasions as to sex crimes preceding the first rape because no evidence existed "of any interval 'between' these sex crimes affording a reasonable opportunity for reflection." According to the evidence, leading up to the first rape, the defendant started kissing the victim, "removed her pants and after more kissing put his finger in her vagina. He then kissed her genitals. He then put his penis in her vagina. After five or six minutes of copulation he stopped and left the car." (*Id*. at p. 15.) In *People v. Pena* (1992) 7 Cal.App.4th 1294, 1316, the appellate court determined acts of defendant raping the victim and then orally copulating her could not be determined to have been on separate occasions when "nothing in the record before this court indicate[d] *any* appreciable interval 'between' the rape and oral copulation. After the rape, [the defendant] simply flipped the victim over and orally copulated her. The assault . . . was also continuous. [The defendant] simply did not cease his sexually assaultive behavior, and, therefore, could not have 'resumed' sexually assaultive behavior." In *People v. Hammon* (1987) 191 Cal.App.3d 1084, 1100-1101, which addressed the issue of multiple convictions for the same offense, not the question of separate occasions, the appellate court concluded that defendant could not be convicted of two counts of the same sexual offense when only a momentary change in position occurred between two alleged acts of oral copulation of defendant's penis and two alleged acts of oral copulation of the victim's vagina. These authorities cited by Andrade do not suggest that no reasonable trier of fact could determine that, based on the evidence, an appreciable amount of time elapsed between the acts of forcible oral copulation and forcible rape such that Andrade had a reasonable opportunity for reflection.

This case is more in line with *People v. Garza*, *supra*, 107 Cal.App.4th at pp. 1092-1093 in which the appellate court upheld the trial court's finding that the defendant had an "adequate opportunity for reflection" between his insertion of his finger into the victim's vagina and the first act of rape, such that offenses occurred on separate

occasions, when, "[d]uring [the] interval, defendant (1) began to play with the victim's chest; (2) put his gun on the back seat; (3) pulled the victim's legs around his shoulders and, finally, (4) forced his penis inside her vagina." The same decision to uphold the trial court's finding that two sexual offenses occurred on separate occasions is warranted here.

2.     *The Trial Court Sufficiently Stated Its Reasons for Exercising Its Discretion in the Alternative Under Section 667.6, Subdivision (c), to Impose Consecutive Sentences on Counts 3 and 4*

Andrade next contends that, if consecutive sentencing was not mandated, the trial court failed to sufficiently state its reasons for exercising its discretion in the alternative to impose consecutive sentences under section 667.6, subdivision (c). As noted, we conclude substantial evidence supports the court's finding that the forcible oral copulation and forcible rape occurred on separate occasions such that consecutive sentences were mandatory, and we also reject Andrade's alternative argument that the discretionary imposition of consecutive sentences is error given the court's statement of reasons.

After stating its conclusion that consecutive sentences were mandatory based on the evidence that the forcible oral copulation and forcible rape occurred on separate occasions, the court explained, "I also want to make it clear that the court is aware of its discretion under . . . section 667.6[,] subdivision (c). And I'm prepared and do exercise my discretion under that separate statutory scheme . . . . And I am aware that it involves stating reasons and making a separate and additional sentencing choice . . . . And in making that separate and additional choice, I state the following reasons: [Andrade's] conduct in snatching from the street utilizing a ruse a vulnerable young lady displaying an object which appeared to be a weapon for an extensive period of time and what appeared to her to be a gun, pointing that gun at her head continuously during a period of sexually assaultive behavior, not utilizing a condom, testing the alleged victim, imposing tremendous emotional trauma on her by asking for her phone number and her having the presence of mind to be thinking[,] '[D]o I want to give him a phoney number so that I can be subjected to God knows what if he finds out I am looking, or do I actually give him

7

my real phone number and perhaps save my life?' It almost sounds counterintuitive because I think most of us might have the reaction why in heavens name would we ever give a sexual perpetrator, a violent sexual perpetrator[,] our contact information so he can contact us. We would say, we are going to lie through our teeth. She had the presence of mind to think about this and about the real potential that she could be in even more grave danger if she lied. But having her provide a phone number and testing her on it demonstrates a real sadistic streak on the part of [Andrade] to place a victim in that type of position. [Andrade] has a prior conviction for prostitution. One may say big deal. It's a misdemeanor. But it isn't a big deal because when one couples that prior conviction with the facts of this case, it demonstrates the degree of seriousness and the fact that [Andrade's] criminality now has escalated . . . . But what's critically important is [Andrade] appears not to be satisfied with simply cruising for sex, and he certainly testified to his pattern. But his behavior has escalated dangerously to the point of stalking, of arming himself, and of emotionally torturing someone before engaging in repeated acts of nonconsensual behavior. [Andrade] would like the jurors and like the court to believe that this incident simply involved consensual sex. Well, . . . the jury rejected that out of hand, and I do as well. [Andrade] simply is a sexually violent predator, and that conduct on his part demonstrates to me a high degree of viciousness and cruelty to [the victim]."

Relying on *People v. Price* (1984) 151 Cal.App.3d 803 (*Price*), Andrade contends this statement of reasons for the discretionary decision to impose consecutive sentences is insufficient because the trial court failed to explain why the forcible oral copulation and forcible rape were distinctively worse than ordinary sexual assault crimes. We disagree. In *Price*, the appellate court determined the trial court's "invocation of the 'cruel, vicious, callous' factor was too general to pass muster" and remanded for resentencing because the aggravating factor of the threat of great bodily injury based on use of a knife was improper as to one count in which an enhancement for use of a knife had been imposed and the evidence did not support the other aggravating factor of the victim's particular vulnerability. (*Id*. at pp. 813-814.) According to the appellate court, "[t]he trial court's

8

statement did no more than invoke what is inherent in any multiple violent sex crime situation." (*Id*. at p. 813.)

Here, in contrast, the court stated valid reasons for its decision to impose discretionary consecutive sentences under section 667.6, subdivision (c). For example, the court relied on Andrade's use of an air pistol, which the victim believed to be a handgun, in forcing her into his truck and in committing the oral copulation and rape. (See Cal. Rules of Court, rule 4.421(a)(1) [threat of great bodily harm] & (a)(2) [defendant was armed with or used a weapon at time of commission of the crime].) Andrade in his sentencing memorandum admitted that his use of the air pistol constituted an aggravating factor. The court also relied on Andrade's failure to use a condom when he forced sexual intercourse on the victim and ejaculated inside of her. (See Cal. Rules of Court, rule 4.421(a)(1) [threat of great bodily harm; high degree of cruelty, viciousness, or callousness].) And it relied on the escalation from Andrade's prior conviction for prostitution to the current offenses, which evidenced "dangerously" "stalking, . . . arming himself, and . . . emotionally torturing someone before engaging in repeated acts of nonconsensual behavior." (See Cal. Rules of Court, rule 4.421(b)(2) [increasing seriousness of convictions].) These factors, all of which unlike in *Price* are valid, support the court's discretionary sentencing choice. (See Cal. Rules of Court, rule 4.426(b) [in sentencing under § 667.6, subd. (c), "judge is to be guided by the criteria listed in rule 4.425, which incorporates rules 4.421 and 4.423, as well as any other reasonably related criteria as provided in rule 4.408"].)

3.  *The Trial Court Was Not Required Pursuant to Section 654 to Stay Execution of Sentence on Count 3*

Andrade contends that the trial court erred by failing pursuant to section 654 to stay execution of the 25-year-to-life sentence on count 3 for forcible oral copulation. According to Andrade, the forcible oral copulation in count 3 and the forcible rape in count 4 were part of an indivisible course of conduct for which he had a single criminal intent and objective, namely, to have sex with the victim. We disagree.

9

A defendant may be convicted of, but not punished for, more than one crime arising out of the same course of conduct. (§§ 954, 654.) Under section 654, subdivision (a), "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "Section 654 [thus] prohibits punishment for two offenses arising from the same act or from a series of acts constituting an indivisible course of conduct. [Citations.] 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citations.] On the other hand, if the defendant entertained multiple criminal objectives that were independent and not incidental to each other, he or she 'may be punished for each statutory violation committed in pursuit of each objective' even though the violations were otherwise part of an indivisible course of conduct. [Citation.] '"The principal inquiry in each case is whether the defendant's criminal intent and objective were single or multiple." [Citation.] "A defendant's criminal objective is 'determined from all the circumstances . . . .'"' [Citation.]" (*People v. Sok* (2010) 181 Cal.App.4th 88, 99, fn. omitted.) "The defendant's intent and objective are factual questions for the trial court; there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]" (*People v. Adams* (1982) 137 Cal.App.3d 346, 355.)

In the context of convictions for more than one sex offense, the Supreme Court has rejected the argument that a "sole intent and objective . . . to obtain sexual gratification" requires application of section 654. (*People v. Perez* (1979) 23 Cal.3d 545, 552 (*Perez*).) According to the Supreme Court, "[s]uch an intent and objective is much too broad and amorphous to determine the applicability of section 654. Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts.

10

To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability. [Citation.] It would reward the defendant who has the greater criminal ambition with a lesser punishment. [Citation.] [¶] A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act. We therefore decline to extend the single intent and objective test of section 654 beyond its purpose to preclude punishment for each such act. [Citations.]" (*Id.* at pp. 552-553.) The Supreme Court determined that section 654 did not preclude punishment for any of the defendant's multiple convictions for sex offenses against a single victim (forcible rape, two counts of forcible oral copulation and forcible sodomy), concluding that "[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other, and none was incidental to the commission of any other." (*Id.* at p. 554; see *People v. Harrison* (1989) 48 Cal.3d 321, 336 ["*Perez* itself is the touchstone in determining how [§ 654's] general principles are to be applied to sex offenses"].)

Under *Perez*, Andrade's argument that section 654 precludes punishment for forcible oral copulation because he harbored a single criminal intent to have sex with his victim and was punished for forcible rape fails. Andrade forced the victim to orally copulate him while he was driving her from the location where he had picked her up. When he stopped driving, Andrade told the victim to pull down her underwear, grabbed her, put her on his lap and had sexual intercourse with her. The oral copulation was not committed as a means of committing the rape, did not facilitate commission of the rape and was not incidental to the rape. Section 654 thus does not preclude punishment for forcible oral copulation.

11

4. *Substantial Evidence Supports the Jury's True Finding on the Special Allegation Under Section 667.61, Subdivision (d)(2), as to Counts 3 and 4*

Andrade contends that, as to the forcible oral copulation and forcible rape, the evidence does not support the jury's true finding under section 667.61, subdivision (d)(2), that he "kidnapped the victim of the present offense[s] and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense[s]." According to Andrade, "the kidnapping did not increase the risk to [the victim] and was *merely incidental* to the charged acts" because no one was present from the time of the beginning of the crimes to the end. Again, we disagree.

In reviewing a challenge to the sufficiency of the evidence, we "consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt. [Citations.]" (*People v. Mincey* (1992) 2 Cal.4th 408, 432, fn. omitted.) Substantial evidence is that which is "reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

Under section 667.61, subdivision (d)(2), "the 'risk of harm' element focuses on the movement of the victim during the kidnapping, and the resulting risk of harm. The jury is to consider 'such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.]'" (*People v. Jones* (1997) 58 Cal.App.4th 693, 713, quoting *People v. Rayford* (1994) 9 Cal.4th 1, 13-14.) "'"[A]ny substantial asportation [that] involves forcible control of the . . . victim"['] will satisfy the '"risk of harm"' test. [Citation.] Accordingly, '[t]he "risk of harm" test is satisfied when the victim is forced to travel a substantial distance under the threat of imminent injury by a deadly weapon. [Citation.]' [Citations.] On the other hand, when a defendant 'does no

more than move his victim around inside the premises in which he finds [her],' the movement generally will be deemed insufficient. [Citation.]" (*Jones*, at pp. 713-714.)

The evidence is sufficient to support the jury's true finding under section 667.61, subdivision (d)(2). Andrade approached the victim on the street pointing his air pistol, which she believed to be a handgun, at her back, and forced her into his truck, which was parked on the street. He then drove several blocks, while forcing her to orally copulate him, still with the air pistol in her view. He stopped driving and then forcibly raped her in the truck. Removing the victim from the street into his truck and then forcing her to orally copulate him while the truck was moving decreased the likelihood of detection. Forcing the victim to orally copulate him while the truck was moving also increased the danger inherent in the victim's foreseeable attempts to escape. After parking the truck, Andrade was able to commit the additional crime of forcible rape with the victim in the truck, off of the street and away from the location where he had started the attack. The movement was not incidental to the crimes but rather a means to gain forcible control of the victim, particularly given that Andrade used the air pistol, appearing like a handgun, both to force the victim into the truck and to commit the oral copulation and rape. Andrade "quite obviously moved the victim in order to complete the attack and avoid detection. The scope and nature of the movement dramatically changed the environmental context" from where he first approached the victim on the street. (*People v. Diaz* (2000) 78 Cal.App.4th 243, 248-249 ["forcible movement of the victim into the darkened park and behind a large building was properly found by the jury to have been more than incidental to the sexual assault" and to have increased the risk of harm to the victim based on where the attack began on a lighted sidewalk near the bus stop].)

5.    *Andrade's Sentence of 50 Years to Life Is Not Cruel or Unusual Punishment*

Because of the jury's true finding on the section 667.61, subdivision (d)(2), allegation, the trial court was required to sentence Andrade to 25 years to life on both the forcible oral copulation and forcible rape counts. (§ 667.61, subd. (a).) The court then imposed the 25-year-to-life terms consecutively under the mandatory provision of section 667.6, subdivision (d), and the discretionary provision of section 667.6,

subdivision (c), resulting in a sentence of 50 years to life. Andrade contends that this sentence constitutes cruel and unusual punishment under the state and federal Constitutions.

Because Andrade did not raise the issue of cruel or unusual punishment in the trial court, he has waived the argument on appeal. (*People v. Em* (2009) 171 Cal.App.4th 964, 971, fn. 5; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.)

In any case, the argument fails on its merits. "Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment. [Citations.]" (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496.) "Fixing the penalty for crimes is the province of the Legislature, which is in the best position to evaluate the gravity of different crimes and to make judgments among different penological approaches. [Citations.] Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive. [Citations.]" (*Id.* at p. 494.)

Against this backdrop, under the California Constitution, a sentence may violate the prohibition against cruel or unusual punishment only if it is so disproportionate to the crime for which it was imposed that it "shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) The appellate court considers (1) the nature of the offense and the offender, "with particular regard to the degree of danger both present to society"; (2) how the punishment compares with punishments for more serious crimes in the jurisdiction; and (3) how the punishment compares with the punishment for the same offense in other jurisdictions. (*Id.* at pp. 425-427.) A defendant must overcome a "considerable burden" to demonstrate his sentence is disproportionate to his level of culpability. (*People v. Wingo* (1975) 14 Cal.3d 169, 174.)

Regarding the nature of the offense and the offender, Andrade argues that, "when placed on the suggested gradient scale, the physical injury inflicted on [the victim] was as low as possible, given the inherent injurious nature of rape." The nature of the offenses against the victim, however, demonstrate that Andrade's criminal activity has increased

in seriousness from picking up prostitutes to forcing a young woman into his truck with what appeared to be a handgun, driving her away from the scene and engaging in repeated sexual assaults. Andrade kidnapped the victim and then forced her to orally copulate him and have sexual intercourse with him. Given the punishments prescribed by the Legislature, nothing about the nature of the offenses or the offender suggests, as Andrade contends, that his sentence is cruel or unusual because he did not inflict a greater injury on the victim. Indeed, the nature of the offenses in kidnapping and then sexually assaulting a victim presents a heightened degree of danger to society. (See *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1277-1282 [cruel and unusual punishment rejected for defendant who received 25-year-to-life sentence for conviction for rape during commission of burglary with intent to commit rape, even though he had no prior felony convictions, used no weapon during the offense, did not cause or threaten any harm beyond that inherent in the crime of rape and expressed remorse after the crime]; *People v. Crooks* (1997) 55 Cal.App.4th 797, 806-809 [cruel and unusual punishment argument rejected for defendant who received 25-year-to-life sentence for conviction for rape during commission of burglary with intent to commit rape, even though he had an insignificant prior record, had led a productive life as husband and father and had an alcohol problem].)

As to punishment for other crimes in California, Andrade contends that his sentence is disproportionate under the scope of section 667.61 because committing one of the enumerated sex offenses under some of the circumstances listed in subdivision (e), such a personal use of a dangerous or deadly weapon or a firearm during the offense (subd. (e)(3)), tying or binding of the victim during the offenses (subd. (e)(5)) and administration of a controlled substance to the victim during the offense (subd. (e)(6)), carry only a 15-year-to-life penalty, whereas the kidnapping circumstance under subdivision (d)(2) found true by the jury carries a 25-year-to-life penalty. According to Andrade, the circumstances identified in subdivision (e) are "more serious crimes" than those for which the jury convicted him. Andrade's argument regarding section 667.61, however, has been rejected. "For the 25-year minimum term to apply, the predicate

offense must be a crime of sexual violence [except in the case of commission of a lewd or lascivious act on a child under the age of 14] *and* it must be committed under circumstances [that] increase the risk of injury or death to the victim such as kidnapping, burglary, or infliction of mayhem or torture [citation] or be committed by one previously convicted of a violent sex offense [citation]." (*People v. Estrada*, *supra*, 57 Cal.App.4th at p. 1280 & fn. 8.) Section 667.61 thus is "an indiscriminate sentencing scheme [that] metes out the same punishment for a broadly defined offense regardless of the circumstances surrounding the commission of the offense. [Citation.]" (*Id*. at p. 1280.) It is a legislative determination which circumstances merit the 25-year-to-life penalty as compared to the 15-year-to-life penalty. Indeed, "[c]ourts have uniformly rejected claims [that punishing crimes with a kidnapping more severely] is constitutionally disproportionate 'given the long-standing, even ancient, horror of kidnapping [citation] and the substantial risk to human life that it presents[.]' [Citations.]" (*Id*. at p. 1281.)

Regarding crimes in other jurisdictions, Andrade cites Connecticut and Virginia law, which he says impose punishments less than 25 years to life for aggravated rape. Andrade, however, does not recognize that, in *People v. Crooks*, *supra*, 55 Cal.App.4th at pp. 808-809, citing *Solem v. Helm* (1983) 463 U.S. 277, 291-292, the appellate court rejected a disproportionality argument based on a federal appeals court's decision that Louisiana's mandatory life-without-the-possibility-parole punishment for aggravated rape did not amount to cruel or unusual punishment under the Eighth Amendment in part because at least four other jurisdictions provided life sentences for rape. Given those punishments, Andrade's sentence for both forcible rape and oral copulation, along with a kidnapping finding under section 667.61, subdivision (d)(2), is not disproportionate.

Andrade does not provide a distinct and separate cruel-and-unusual-punishment analysis under the federal Constitution. We note that, under the federal Constitution, the Eighth Amendment's cruel-and-unusual-punishment clause "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' [Citations.]" (*Ewing v. California* (2003) 538 U.S. 11, 20.) In addition, "the principles developed by our [high] court [regarding cruel and unusual punishment] are similar to those developed by the

16

United States Supreme Court . . . [and] the federal high court[] [has] reminde[d] that appellate courts, 'of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes[.]' [Citation.]" (*People v. Barrera* (1993) 14 Cal.App.4th 1555, 1566, fn. 7.) Andrade's cruel-and-unusual-punishment argument thus fares no better under the federal Constitution.

## DISPOSITION

The judgment is affirmed. As noted, the abstract of judgment incorrectly states that the trial court imposed 25-year-to-life terms on counts 1 and 2, rather than on counts 3 and 4. We, therefore, direct the court to prepare a corrected abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


ROTHSCHILD, Acting P. J.

We concur:


CHANEY, J.


MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17