Filed 3/22/22  P. v. Wing CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>STEVEN WAYNE WING,<br><br>        Defendant and Appellant. | A164262<br><br>(Tulare County<br>Super. Ct. No. VCF353893) |

Steven Wayne Wing appeals from a sentence of 400 years to life in prison after a jury convicted him of four counts of sexual penetration with a child under 10 years old in violation of Penal Code[1] section 288.7, subdivision (b) (§ 288.7(b)) and eight counts of committing a lewd and lascivious act on a child under age 14 in violation of section 288, subdivision (a) (§ 288(a)) while having a previous conviction for committing a lewd and lascivious act on a child under age 14.  The trial court also imposed various fines, fees, and assessments.  Wing contends his lengthy prison sentence constitutes cruel and unusual punishment in violation of the United States and California constitutions; the trial court

---

[1] Undesignated statutory references are to the Penal Code.

1

violated his due process rights by imposing fines, fees, and assessments without inquiring into his ability to pay them; it violated his statutory rights by imposing two fines that he cannot pay; and the statute the trial court cited as the basis for one of the fines is inapplicable. We agree that the statute the trial court cited for one of the fines is inapplicable, but we disagree with the remainder of Wing's arguments. We will therefore strike the improper fine, remand for further proceedings as to that fine, and otherwise affirm the judgment.

## BACKGROUND

Wing was born in 1953. In 1985, he was convicted of committing a lewd act on a child under age 14 (former § 288(a)).

In 2017, Wing lived with his wife in Visalia. Wing's stepdaughter, Chelsea P., lived in Reedley with her two daughters, L. and J. One day, when L. was six years old, Chelsea learned from L. that Wing sometimes touched L.'s vagina.

A few weeks later, L. participated in a forensic interview. In such an interview, an individual trained in dealing with children who have experienced trauma makes children comfortable and asks questions that are not leading while police observe and suggest additional questions. L. said in her interview that starting when she was four or five, Wing put his hand under her clothes and underwear whenever she sat on his lap or next to him. Wing used his fingers to touch and rub the area between L.'s labia and the area between her buttocks, but not inside her vagina or anus. Sometimes it burned when he touched her vagina because his hands were dirty. Wing said,

2

"Oh, yeah" when he touched her, in a way L. found "actually very awkward and a bit creepy." Wing told L. not to say anything because he did not want to get in trouble. When asked whether the touching happened more than one time, L. said, "More than one. More than two, three, four, five, six, seven, eight, nine, ten." She said Wing touched her "all the time" and "a lot of times" whenever she went to his house and one time at her own house.

The police questioned Wing, who told them that if he happened to touch L., it was not intentional. When asked whether he had touched her at least 10 times, he said, "Maybe so." Wing also allowed the police to access his phone. The police found photos primarily of L. Some of the photos were zoomed in on L.'s bottom. In one photo, L. was wearing shorts and lying down with her legs slightly spread open in a way that revealed a little of her underwear. Another photo was taken from behind L. as she was kneeling and bent over with her knees apart.

At trial two years later, the prosecutor played for the jury recordings of L.'s forensic interview and Wing's police interview. L. also testified. She initially said she did not remember what happened with Wing or how often. She had tried to distract herself and forget it. She said Wing had not touched her buttocks, but she also said that Wing had touched her groin more than one time. L said it did not hurt when Wing touched her. But she said repeatedly that she had told the truth during her forensic interview.

The jury convicted Wing of four counts of sexual penetration of a child under age 10 in violation of section

288.7(b), once at L.'s home in Reedley and three times at Wing's home in Visalia. It also convicted him of eight counts of committing a lewd and lascivious act on a child in violation of section 288(a) for touching her vagina and buttocks once each at her home in Reedley and three times each at Wing's home in Visalia. As to the counts based on touching L.'s vagina, the jury found true the special allegation that Wing had substantial sexual conduct with L. As to all of the section 288(a) counts, the jury found true the special allegation that Wing had previously been convicted of violating former section 288(a) in 1985.

The prosecution asked the trial court to sentence Wing to 400 years to life in prison for the eight section 288(a) counts and impose but stay a sentence of 120 years to life in prison for the four section 288.7(b) counts. Wing argued that a sentence of 400 years to life was cruel and unusual and asked the court to strike his prior conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 because the conviction was from 1985. The trial court declined to strike Wing's prior conviction and rejected Wing's argument that the sentence was cruel and unusual. The trial court sentenced Wing to 120 years to life in prison for the section 288.7(b) counts but stayed that sentence based on section 654. The court then imposed a sentence of 50 years to life for each of the section 288(a) counts, totaling 400 years.

The court also imposed (1) a $10,000 restitution fine under section 1202.4; (2) a $1,000 restitution fine under section 294, subdivision (b) (§ 294(b)); (3) a $500 fine under section 290.3; (4) a $480 court operation assessment under section 1465.8, payable

within 30 days of release from custody or electronic monitoring; and (5) a $360 criminal conviction assessment under Penal Code section 70703.[2]  Wing asked the trial court to stay the restitution fines and other fees under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).  The trial court denied the request, stating, "This did not fall within the *Dueñas* category.  There is case law that states that it does not apply to cases such as this."

---

[2] Regarding the restitution fine, the trial court said that Wing's period of parole would be 10 years and then said, "*If granted parole* pursuant to Section 300(b)(3) of the Penal Code, the defendant is ordered to pay restitution fine (3000) [sic] of $10,000 pursuant to 1202.4 of the Penal Code[] [¶] [c]ollected by the Department of Corrections, who shall deposit such amounts as received in the state treasury." (Italics added.)  Immediately after this, the trial court ordered Wing to "pay [a] parole revocation restitution fine in the amount of $10,000 pursuant to Section 1202.45 of the Penal Code to be suspended pending successful completion of parole."  Citing the minute order and abstract of judgment, the parties both describe the first fine as a restitution fine under section 1202.4, subdivision (b), and they do not describe the fine as being conditioned on the granting of parole.  The parties also rely on the minute order and abstract to describe the criminal conviction assessment, which the trial court stated was based on Penal Code section 70703, as being instead based on Government Code section 70373.  Penal Code section 70703 does not exist.  However, the trial court's oral pronouncement of judgment controls over the written abstract of judgment. (*People v. Jones* (2012) 54 Cal.4th 1, 89.)  We will therefore instruct the trial court on remand to clarify the basis for these fines.

## DISCUSSION

### I. Cruel and unusual punishment

" 'The Eighth Amendment to the United States Constitution applies to the states. [Citation.] It prohibits the infliction of "cruel *and* unusual" punishment. (U.S. Const., 8th Amend., italics added.) Article I, section 17 of the California Constitution prohibits infliction of "[c]ruel *or* unusual" punishment. (Italics added.) The distinction in wording is 'purposeful and substantive rather than merely semantic. [Citations.]' [Citation.] As a result, we construe the state constitutional provision "separately from its counterpart in the federal Constitution." ' " (*People v. Baker* (2018) 20 Cal.App.5th 711, 723.)

#### A. *California Constitution*

Under the California Constitution, a punishment may violate our Constitution if, although not cruel or unusual in its methods, "it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity." (*People v. Murray* (2012) 203 Cal.App.4th 277, 285, disapproved on other grounds by *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1370, 1387.) Deference to the Legislature "is an important element in any disproportionality analysis." (*In re Palmer* (2021) 10 Cal.5th 959, 972.) "Such an inquiry grants the Legislature considerable latitude in matching punishments to offenses." (*Ibid.*) "A claim of excessive punishment must overcome a 'considerable burden' [citation], and courts should give ' "the broadest discretion possible" ' [citation] to the

6

legislative judgment respecting appropriate punishment." (*Ibid.*) "Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 494.)

Our Supreme Court has distilled three "analytical techniques" to guide courts' deferential analysis of disproportionality claims: "(1) an examination of the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) a comparison of the punishment with the punishment California imposes for more serious offenses; and (3) a comparison of the punishment with that prescribed in other jurisdictions for the same offense." (*In re Palmer*, *supra*, 10 Cal.5th at p. 973.) The examination of the offense and the offender looks both at the crime in the abstract, as the Legislature defined it, as well as the totality of the circumstances of the specific crime a defendant has committed, "including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts." (*People v. Dillon* (1983) 34 Cal.3d 441, 479.) "Any one of these three factors can be sufficient to demonstrate that a particular punishment is cruel and unusual." (*People v. Mendez* (2010) 188 Cal.App.4th 47, 64–65.)

On the first factor, Wing sets aside his four counts for violating section 288.7(b) because the sentence on those counts was stayed under section 654. He contends that his remaining eight section 288(a) counts, which are based on touching L.'s vagina and buttocks each on four occasions, represent four

7

courses of conduct, since it is impossible for him to have touched L.'s vagina without also touching her buttocks. He adds that the mere touching of buttocks is not the most egregious manner in which he could have violated section 288(a).

In assessing the nature of Wing's offense and his danger to society, we begin from the principle that "sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." (*Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 244.) California has a "strong public policy to protect children of tender years." (*People v. Olsen* (1984) 36 Cal.3d 638, 646.) Viewed on the spectrum of the various offenses one might commit, "lewd conduct on a child may not be the most grave of all offenses, but its seriousness is considerable. It may have lifelong consequences to the well-being of the child." (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806.)

The circumstances surrounding Wing's offenses were serious in ways Wing does not acknowledge. Wing was in his 60s when the abuse occurred. He had a prior section 288(a) conviction for molesting the daughter of his girlfriend with whom he was living at the time. Wing was sentenced to six years in prison for his previous offense. Wing nonetheless re-offended in a similar way, by violating a vulnerable child and abusing his position of love and trust within his family.

His assertion that each of his touches of her vagina was necessarily part of a single course of conduct with each of his touches of her buttocks is not relevant, since that does not make any of the acts of abuse less violating. Fewer occasions of more

8

extensive abuse are not constitutionally protected from more severe punishment. Nor is that assertion correct. While the touches at L.'s home occurred on the same occasion, Wing cites nothing to substantiate his speculation that the rest of the touches occurred on the same occasions. The convictions for touching L.'s buttocks and for touching her vagina could have been based on different instances, since L. was clear in her forensic interview that Wing had touched her on numerous occasions.

Wing's argument that merely touching a buttock is not the most egregious way to violate section 288(a) is perhaps true but inapposite. Wing did more than merely touch L.'s buttock. He touched L.'s buttocks and her vagina, on multiple occasions, over the course of years. His abuse came to light when L. was six years old and would have been finishing kindergarten, and L. told the police that it had started in preschool when she was four or five years old. The abuse took place in Wing's home and at least once in L.'s own home. Wing's touches of L.'s vagina caused her pain, since his hands were dirty and caused a burning sensation. Wing's offenses represent a campaign of violating a young child at locations where she should have been safe.

The abuse also had a significant impact on L. She testified that she had terrible dreams about him breaking out of jail and that her life was in danger. She said the trial was overwhelming. Her mother's sentencing statement said that L. had had behavioral issues, confusion, and pain, and L. was afraid and wanted to feel safe.

9

In short, contrary to Wing's attempt to minimize his crimes, his offenses were serious and, in light of his recidivism, presented an ongoing danger to society. His lengthy sentence, when compared to the nature of his offense and his circumstances, does not shock the conscience or offend fundamental notions of human dignity. (*In re Lynch* (1972) 8 Cal.3d 410, 424.)

On the second factor, a comparison of his crime to other offenses in California, Wing contends his offenses are far less egregious than those in several cases in which courts have upheld lengthy sentences for rapes committed during burglaries. (*People v. Reyes* (2016) 246 Cal.App.4th 62, 82-90; *People v. Alvarado* (2001) 87 Cal.App.4th 178, 199–201; *People v. Crooks* (1997) 55 Cal.App.4th 797, 804–809.) He also notes that his sentence is eight or sixteen times longer than the sentence for first degree murder, depending on whether one considers his prior conviction. These arguments ignore the fact that Wing was convicted of not one but 12 felonies, and his sentence includes consecutive terms for eight of them. (*Crooks*, at p. 807 ["The penalties for single offenses . . . cannot properly be compared to those for multiple offenses"].) Wing is also a recidivist, having previously committed the same offense for which he was sentenced here. Given the repeated nature of Wing's offenses, his status as a repeat offender, and the abhorrent nature of his acts with respect to a member of his own family, his sentence is not disproportionate when compared to other offenses.

Wing does not address whether his sentence is disproportionate in light of the punishment in other states for the same offense, so we need not consider that third factor. And having concluded this his offense is not disproportionate under either of the first two factors, we therefore reject his overall contention that his sentence is unconstitutionally cruel or unusual under the California Constitution.

## B. *United States Constitution*

As applied to punishments of imprisonment, the Eighth Amendment contains a " 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.' " (*Graham v. Florida* (2010) 560 U.S. 48, 59–60.) The Supreme Court has instructed that this principle is "applicable only in the 'exceedingly rare' and 'extreme' case." (*Andrade v. Lockyer* (2003) 538 U.S. 63, 73.) A proportionality inquiry under the Eighth Amendment "must begin by comparing the gravity of the offense and the severity of the sentence. [Citation.] '[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation.] If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." (*Graham*, at p. 60.)

11

Wing's sentence is not unconstitutional under the Eighth Amendment for two reasons.  First, the severity of Wing's sentence is not disproportionate to the gravity of his offense, for the reasons set forth, *ante*, with respect to Wing's claim under the California Constitution.  Second, as we have also just noted, Wing does not compare his sentence to sentences in other jurisdictions.  Such a comparison is necessary to " 'validate[]' " a finding of disproportionality of sentence and offense under the Eighth Amendment.  (*Graham v. Florida*, *supra*, 560 U.S. at p. 60.)  Wing's failure to complete the necessary analysis is fatal to his federal claim.

## II.     Imposition of fines without consideration of Wing's ability to pay

Wing argues the trial court violated his right to due process under the rationale of *Dueñas* by imposing a $10,000 restitution fine, a $480 court operations assessment, and a $360 criminal conviction assessment without considering his ability to pay.

"In a nutshell, *Dueñas*, *supra*, 30 Cal.App.5th at pages 1168–1169, held that a sentencing court violated the due process rights of a defendant who committed her acts out of poverty when it imposed certain mandatory fees and fines that lack a statutory exception without first making a finding the unemployed defendant (who suffered from cerebral palsy) had the ability to pay while she was on probation." (*People v. Oliver* (2020) 54 Cal.App.5th 1084, 1100.)  Several decisions have disagreed with *Dueñas*, and the California Supreme Court is currently considering the issue.  (E.g., *People v. Hicks* (2019)

12

40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946; *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.) In the absence of any guidance from our Supreme Court, we adhere to the view expressed in this Division's decision in *People v. Cowan* (2020) 47 Cal.App.5th 32, review granted June 17, 2020, S261952 (*Cowan*) that constitutional challenges to fines or fees based on a claim that a defendant cannot pay them should be evaluated under the Eighth Amendment and article I, section 17 of the California Constitution. (*Cowan*, at p. 42; see *Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9 ["Absent a compelling reason, the Courts of Appeal are normally loath to overrule prior decisions from another panel of the same undivided district or from the same division"].) Four factors are relevant to that type of evaluation: " '(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay.' " (*Cowan*, at p. 47.) A defendant bears the burden of proof regarding his or her ability to pay. (*Id.* at p. 49.)

We recognize that the Fifth District Court of Appeal initially had jurisdiction over this appeal when Wing filed his briefs, before our Supreme Court transferred the case to this court, so we do not fault Wing for failing to cite *Cowan* as the primary authority on point. But as Wing admits, before *Cowan* was decided the Fifth District Court of Appeal had already held that *Dueñas* was wrongly decided and, like *Cowan* did later, instructed that challenges to fines, fees, or assessments based on

13

inability to pay should be based on the Eighth Amendment and the four factors listed above. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1067-1070.) *Aviles* was also decided almost two months before Wing's sentencing. At his sentencing hearing, Wing still did not mention the four Eighth Amendment factors and relied only on *Dueñas*. And even then, Wing did not try to show he was unable to pay the fines and assessments the trial court imposed. Wing simply made a one-sentence request to stay the fines and fees under *Dueñas*.

On appeal, Wing continues to focus only on his alleged inability to pay. As in the trial court, he presents barely any argument at all, beyond citing *Dueñas*, noting that the Supreme Court is reviewing the issue, and purporting to preserve the issue pending the Supreme Court's decision. Given Wing's failure to develop the argument and address all four relevant factors, both in the trial court and this court, we conclude he has not established that the fine and assessments imposed by the trial court are unconstitutionally excessive. (See *People v. Miralrio* (2008) 167 Cal.App.4th 448, 452, fn. 4 [an appellate court is not required to address undeveloped claims or ones inadequately briefed]; *In re S.C.* (2006) 138 Cal.App.4th 396, 408 [a judgment is presumed correct on appeal, and to demonstrate error, appellant must present meaningful legal analysis supported by citations to authority].)

## III. Fine under section 294(b)

Wing argues the trial court erred by imposing a $1,000 fine under section 294(b). That provision states in full, "Upon

14

conviction of any person for a violation of Section 261, 264.1, 285, 286, 287, or 289 or former Section 288a, where the violation is with a minor under the age of 14 years, the court may, in addition to any other penalty or restitution fine imposed, order the defendant to pay a restitution fine based on the defendant's ability to pay not to exceed five thousand dollars ($5,000), upon a felony conviction, or one thousand dollars ($1,000), upon a misdemeanor conviction, to be deposited in the Restitution Fund to be transferred to the county children's trust fund for the purpose of child abuse prevention."

Wing was convicted of four counts of sexual penetration of a child under age 10 in violation of section 288.7(b), which incorporates the definition of sexual penetration from section 289. (§ 288.7(b) ["Any person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 15 years to life"].) But Wing points out that the trial court stayed the sentence for the section 288.7(b) counts and imposed prison terms only for his eight violations of section 288(a). He therefore contends the trial court had no basis for imposing a fine under section 294(b).

The Attorney General agrees with Wing that section 294(b) was inapplicable in this case because the trial court stayed the sentence on the four counts based on section 288.7(b) and section 288(a) is not listed in section 294(b). But he urges us to uphold the fine anyway, because the trial court could have imposed a

15

fine under section 288, subdivision (e)(1), which authorizes a fine for the purposes of child abuse prevention like section 294(b). He argues the trial court "should be deemed to have misspoken" the relevant code section.

We conclude that the section 294(b) fine was unauthorized, but for a slightly different reason than the parties present. Section 294(b) authorizes the imposition of a fine only for violation of certain enumerated statutes. Wing was convicted of violating sections 288(a) and 288.7(b), neither of which is enumerated in section 294(b). Section 288.7(b) incorporates by reference the definition of sexual penetration from section 289, which is listed in section 294(b). But section 288.7(b)'s incorporation of a definition from section 289 does not transform Wing's conviction under section 288.7(b) into one under section 289. Accordingly, the section 294(b) fine was unauthorized, not because Wing's sentence for violating section 288.7(b) was stayed, but because section 288.7 is not listed in section 294(b).

We decline the Attorney General's invitation to remedy the trial court's error by deeming it to have misstated the relevant statute for the fine. He cites no authority for deeming the trial court to have misspoken in the way he suggests. Even if we could do so, we would not in this instance because the trial court did not misspeak. As Wing points out in his reply, the record is clear that the trial court intended to impose the fine under section 294(b). The court said the Department of Corrections should collect the fine and transfer it to the California children's trust fund for the purposes of child abuse prevention, and this

16

language generally tracks the language of section 294(b). By contrast, a fine under section 288, subdivision (e)(1) is designated for deposit in the Victim-Witness Assistance Fund, not the children's trust fund. (§ 288, subd. (e)(1).) In addition, section 288, subdivision (e)(1) authorizes a fine "to be available for appropriation to fund child sexual exploitation and child sexual abuse victim counseling centers and prevention programs," and those purposes are broader than the purpose identified in section 294(b) and the trial court's remarks relating to child abuse prevention. (*Ibid.*)

While we will not recharacterize the fine the trial court imposed, we recognize that the trial court might have relied instead on section 288, subdivision (e)(1) had it known the section 294(b) fine was unauthorized. The issue is analogous to a trial court's error in imposing an unauthorized prison sentence, for which the remedy is to remand to the trial court for the trial court to exercise its sentencing discretion in light of the changed circumstances. (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) We will therefore strike the fine and remand the matter to the trial court to decide whether to impose a fine instead under a different statute, such as section 288, subdivision (e)(1).

## IV. Ability to pay fines under sections 290.3 and 294

In an argument related to his *Dueñas* contention, Wing argues the trial court erred in imposing a fine under section 290.3, subdivision (a) and a restitution fine under section 294(b) without considering his ability to pay them. Because we have already concluded the section 294(b) fine must be stricken, we

will focus on the fine under section 290.3, subdivision (a). That statute provides that anyone convicted of certain offenses, including violations of section 288, "shall, in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, unless the court determines that the defendant does not have the ability to pay the fine." (§ 290.3, subd. (a).)

Wing asserts that this statute required the trial court to consider his ability to pay. He construes the trial court's rejection of his *Dueñas* argument as indicating it believed it did not need to consider his ability to pay under section 290.3, subdivision (a), despite the statutory requirement.

We are unpersuaded. The trial court rejected Wing's *Dueñas* argument based on case law (which the trial court did not cite) holding that *Dueñas* was inapplicable to cases like Wing's. Nothing about the trial court's statement or its context suggests the trial court believed it did not have to conduct an inquiry under section 290.3 into Wing's ability to pay. We therefore construe the trial court's imposition of the fine as reflecting an implicit finding that Wing was able to pay it. (*People v. Clark* (1992) 7 Cal.App.4th 1041, 1050.)

Wing has not shown any error in this implied finding. He notes he was 66 years old at sentencing, monthly wages for prison inmates range from $12 to $56, and the California Department of Corrections and Rehabilitation will deduct up to

18

half of those wages to pay any outstanding restitution fines under section 1202.4, subdivision (b). (*People v. Aviles*, *supra*, 39 Cal.App.5th at p. 1076.) He reasons that his prison wages during the remaining years of his life will not be enough to pay the $10,840 in other fines and assessments the trial court imposed as well as the $1,500 the court imposed under sections 290.3, subdivision (a) and 294(b).

Assuming Wing makes the maximum $56 per month during every month of his sentence, it would take him more than 18 years of prison wages to pay off all the fines. Given his age, he may be unlikely to accomplish this during the remaining years of his life. However, nowhere does Wing explain why he must rely only on prison wages to pay the fines and assessments. He had the burden of proving he was unable to pay the section 290.3 fine. (*People v. McMahan* (1992) 3 Cal.App.4th 740, 749.) But, as noted, *ante*, Wing did not present any evidence of his financial condition or argue that he was unable to pay any fines beyond simply citing to *Dueñas*. The evidence at trial showed that Wing worked as a truck driver for at least 10 years before he was arrested. It is possible that he has money, liquid assets, or property of some other kind that he might use to satisfy the fines the trial court imposed or reduce them to the point that he could pay the remainder with prison wages. Wing has not shown the imposition of the fine was error.

## DISPOSITION

The restitution fine imposed under Penal Code section 294 is stricken. The matter is remanded for the trial court to consider

19

whether to impose a fine under another statute, and to clarify the nature and basis of the restitution fine and criminal conviction assessment it imposed.

BROWN, J.

WE CONCUR:

STREETER, ACTING P. J.
DESAUTELS, J.*

*People v. Wing* (A164262)

---

&ast; Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.